STATE, EX REL. B. K. BUSHEE, RELATOR, V. WILLIAM G. WHITMORE ET AL., RESPONDENTS.*

FILED DECEMBER 14, 1909. No. 16,427.

1. Experimental stations may be lawfully maintained in connection with the college of agriculture in the university of Nebraska.

2. Colleges and Universities: BOARD OF REGENTS: DUTIES. It is the duty of the board of regents to obey the will of the legislature as expressed in chapters 143 and 144, laws 1909.

ORIGINAL application for a writ of mandamus to compel respondents, the board of regents of the university of Nebraska, to equip and maintain two agricultural experimental stations, as required by law. *Writ allowed.*

*Shepherd & Ripley,* for relator.

*C. S. Allen, contra.*

ROOT, J.

This is an original action for a writ of peremptory mandamus to compel the board of regents of the university of Nebraska to locate, equip and maintain two experimental stations according to the provisions of chapters 143, 144, laws 1909; sections $32f^2$-$32f^{14}$, ch. 87, Comp. St. 1909. Respondents do not attack relator's right to maintain this action, but assert that in each of said acts the legislature explained that the object of the legislation is "to determine the adaptability of the arid and semiarid portions of Nebraska to agriculture, horticulture, * * * such as the producing of grain, grasses, root crops and fruits of kinds commonly grown in same latitude in other states, also the most economical methods of producing such crops without irrigation." Respondents further contend that the funds under their control consist of the income of trust funds pledged to the support of a college teaching

* Opinion modified. See 86 Neb. ——.

branches of study relating to agriculture and the mechanic arts, and the one-mill tax created by the legislature to support and maintain a state university, and that the appropriations made from the temporary university fund cannot lawfully be expended for the purposes expressed in chapters 143 and 144, *supra*.

Section 10, art. VIII of the constitution, directs that the general government of the University of Nebraska shall, under the direction of the legislature, be vested in the board of regents, and that their duties and powers shall be prescribed by law. Section 6, ch. 87, Comp. St. 1909, provides that the university may embrace, among other departments, a college of agriculture. The legislature has also authorized the selection of a state botanist, a state chemist, a state entomologist, and a state geologist, and these officials are directed to give special attention to the interests of the state in their respective departments. By section 8 of said chapter it is made the duty of the governor to set apart two sections of state land for a model farm as part of the college of agriculture. In obedience to the expressed will of the legislature, the regents have created an agricultural college, wherein instruction is given in the arts and sciences as applied to theoretical and practical agriculture. To create, develop and maintain this college, vast sums of money have been from time to time appropriated by the legislature to pay for improving the land segregated by the governor for a model farm, to purchase live stock and tools, and remunerate learned and skilful men for devoting their time and talents to the education of the youth of this state and to the collation and dissemination of facts relating to agriculture.

In 1903 the legislature by chapter 114, laws 1903 (Comp. St. 1909, ch. 87, secs. 32a-32f), directed the regents to locate and maintain an experimental substation in Nebraska, west of the one hundredth meridian. The act of 1903, *supra,* and chapter 143, laws 1909, are identical, with the exception of the territory described in the re-

spective acts. Chapter 144, laws 1909, is also very like the act of 1903, *supra*. The legislature in 1903 appropriated from the temporary university fund for the benefit of the experimental station $15,000. In 1905 the legislature appropriated from said fund $25,000 to defray the expense of the experimental station and for other purposes. No appropriation was made in 1903 or 1905 from the general fund for the benefit of that institution. In 1907 the legislature appropriated $25,000 from the general fund for improving and maintaining said substation. No appropriation was made that year from the temporary university fund for the benefit of the experimental station. The acts of 1909, in question, appropriate $15,000 and $5,000, respectively, from the temporary university fund for the purpose of defraying the cost of acquiring, preparing and maintaining the new experimental stations. The legislature further appropriated from the general fund for the benefit of the university $20,000 in lieu of the money theretofore appropriated from the temporary university fund for the benefit of the experimental stations, but the governor vetoed the appropriation from the general fund. Ninety-five per cent. of the one-mill university tax is appropriated for the benefit of the university, and all money on hand in the university cash fund, or that will be added thereto during the biennium, is likewise appropriated.

The temporary university fund is derived from various sources and is created for the maintenance of the university. *State v. Brian*, 84 Neb. 30. The agricultural college is a constituent part of the university; and, if the maintenance of the experimental stations will advance the purposes for which that college was instituted and is maintained, money may be appropriated from the temporary university fund to defray the expense incident to the creation and maintenance of such stations. Many townships in Nebraska are included within a region described as arid or semiarid. The application of knowledge acquired by observation, experiments and study is rapidly trans-

forming that territory into fertile farms, and a considerable part of that information has been acquired in the first instance through the maintenance of experimental stations. With each recurring year important accretions are added to the stock of knowledge upon this subject. To maintain a well-balanced agricultural college in Nebraska, it is essential that the state acquire, prepare for use and sustain experimental farms, so that scientific observation may bring to light and demonstrate the great truths underlying successful agriculture in Nebraska. If the maintenance of experimental stations will demonstrate "the adaptability of the arid and semiarid portions of Nebraska to agriculture, horticulture and forestry," the efficiency of the college of agriculture will be increased many fold.

The subject of education has been delegated by the people to the legislature. In the exercise of a lawful discretion, which we have neither authority nor a desire to curb, the legislature, in effect, has said that the experimental stations considered are necessary to the welfare and shall become a component part of the college of agriculture in the university of Nebraska. The board of regents is but a mere governmental agency expressly subjected by the constitution to the will of the legislature to work out its projects for higher education. They found no barrier in 1903 to the expenditure of $15,000 from the temporary university fund for the purchase of land and the maintenance thereon of an experimental station, and subsequently have applied like apropriations for the upkeep of that institution. No lawful reason exists for discriminating against the acts in question, nor for refusing to expend appropriations for an extension of the system inaugurated in 1903. Great latitude within certain lines is given respondents in the expenditure of the temporary university fund available for the present biennium, but the appropriations considered have preference over all other beneficiaries of the one-mill levy for that period.

The other defenses suggested have not been overlooked,

but they are not deemed of sufficient importance for specific reference thereto.

The writ will issue.

WRIT ALLOWED.