[No. 10305.   Department Two.   June 25, 1912.]

THE STATE OF WASHINGTON, *on the Relation of School District No. 56, Chelan County, Plaintiff,* v. THE SUPERIOR COURT FOR CHELAN COUNTY *et al., Respondents.*[1]

SCHOOLS AND SCHOOL DISTRICTS—SCHOOL ELECTIONS—VOTE—STATUTES.   Rem. & Bal. Code, § 4664, providing that a school election for the purchase of school grounds shall be by ballot, is directory only, and the election is not invalidated by the fact that a standing vote was taken, in the absence of evidence that the election did not fairly represent the will of the electors.

STATUTES—TITLE AND SUBJECTS—SCHOOLS.   The provision of the code of public instruction relating to the acquisition of school sites is germane to and within the title "an act providing for the maintenance of and relating to a general and uniform school system" of the state etc., where the act itself was very general and covered all manner of subjects relating to the public schools.

EMINENT DOMAIN—COMPENSATION — STATUTES—CONSTRUCTION— SCHOOL HOUSE SITES.   Rem. & Bal. Code, § 913, providing that, upon the condemnation of a school site, the compensation to be paid the owner shall be the fair and full value of the premises does not limit the recovery to the naked value of the land, in violation of the constitution requiring payment of the value of the land taken and for any depreciation to the land not taken; since the statute is directory and contains no words of limitation confining the jury to the value of the land taken alone.

SAME—PUBLIC USE—SCHOOL PLAY GROUNDS.   The condemnation of land adjacent to a school house site, which the physical development of the school children required as a suitable place for recreation and exercise, is for a public use and within the provision of the public schools.

Certiorari to review a judgment of the superior court for Chelan county, Grimshaw, J., entered November 18, 1911, dismissing a condemnation proceeding, after a hearing on the merits before the court.   Reversed.

[1]Reported in 124 Pac. 484.

*Williams & Corbin*, for relator.

*James B. Murphy* and *Bogle, Graves, Merritt & Bogle*, for respondents.

FULLERTON, J.—In this proceeding School District No. 56, Chelan county, seeks to appropriate, as additional grounds to its existing school site, two and twenty-seven one hundredths acres of land out of a tract containing 18 acres, now the property of the respondents J. N. Dotson and Jennie N. Dotson. The records show that the school district named comprises the town of Cashmere, in Chelan county, together with certain outlying territory; that it now owns a school site consisting of two acres, situated in the town of Cashmere on which it has erected two school buildings, one 70 by 75 feet in size, and another 50 by 102, which buildings, it is conceded, are ample to accommodate the present attendance at the school and the anticipated increase in attendance for sometime in the future. The additional grounds sought to be acquired abut upon the existing site and form therewith a single tract or parcel of land.

The testimony of the school officers was to the effect that the present grounds were adequate for the purposes of the school, in the sense that they afforded sufficient room for ingress and egress to and from the school buildings and sufficient room for the necessary auxiliary and out-buildings, but that they were inadequate in the sense that they afforded no room for the pupils attending the school to exercise; the superintendent of the school testifying that it had been found almost impossible, without forbidding all forms of play and exercise, to keep the pupils from trespassing on the adjoining property, and that much complaint had been made to him by adjoining property holders of such trespassing; that the additional ground sought was desired at the present time to afford additional play-grounds for the pupils of the school, that they might have grounds upon which the com-

mon athletic games current among schools of its class ·could be played.

The preliminary proceedings for the acquisition of the lands had by the school board seem to have been in compliance with the statutes, save in one particular. At the special meeting of the voters of the district, called to determine whether the board of directors should be authorized to acquire the additional tract for school purposes, the vote was taken by calling on the voters present to stand up and be counted, instead of by ballot as the statute directs. On the hearing in the court below, at the conclusion of the petitioner's case, the respondents moved for a dismissal of the proceedings on the grounds, first, that the petitioner had not shown a compliance with the law with reference to the selection of the land sought to be taken; second, that the act under which the petitioner is proceeding is invalid and void; and third, that it is seeking to take the land for a purpose not authorized by law. The motion was granted, and the petitioner brought the proceeding to this court by a writ of review.

The contentions of the respondents are the same in this court as they were in the court below, and we shall notice them in the order in which they are stated in the motion. By the code of public instruction it is provided (Laws 1909, p. 349; Rem. & Bal. Code, § 4664), that any board of directors may, at its discretion, call a special meeting of the voters of the district to determine whether the district shall purchase any school house site or sites or additional grounds to an existing site, at all of which such meetings the "voting shall be by ballot, the ballots to be of white paper of uniform size and quality." As we have elsewhere stated, the voting at the special meeting in which it was determined to purchase the school site in question here was not by ballot, but by standing vote, and it is this fact that is thought to render the preliminary proceedings void. But we cannot give it this effect. We think the statute directory, instead of manda- ·

tory.   The sentence which we have quoted is all that the statute contains with reference to the manner of voting.   It will be noticed that there is no requirement that polls shall be opened, that ballot boxes shall be prepared or judges appointed to receive and count the ballots; that it does not provide what the ballots shall contain nor require secrecy with reference to the ballots or manner of voting; in fact, none of the requirements usually accompanying a formal election are made essential; and furthermore there is no provision of the statute, either direct or implied, declaring the election void if the requirements of the statute are not followed in detail.   In such cases, it is usual to hold the provisions directory rather than mandatory, and allow the election to stand unless it appears that the election does not fairly represent the will of the electors.   *Williams v. Shoudy,* 12 Wash. 362, 41 Pac. 169; *Richards v. Klickitat County,* 13 Wash. 509, 43 Pac. 647; 15 Cyc. 316, 318.   There is here no contention that the election complained of did not express the popular will of the electors, and we hold it valid.

In their argument upon the second objection, counsel question the validity of the chapter relating to eminent domain found in the code of public instruction, contending that the particular chapter is not germane to the title of the act known as the code of public instruction.   The title of the act is as follows:

"An Act establishing, providing for the maintenance of, and relating to, a general and uniform public school system for the state of Washington, providing penalties for the violation of the provisions of the act, and repealing all acts and parts of acts in conflict with the provisions of this act." Laws 1909, p. 230.

The body of the act is what the title evidences, namely, a complete code for the government and maintenance of the public schools of the state.   In the act are found provisions relating to the superintendent of public instruction, the higher institutions of learning, the state school for the deaf and blind, the state institution for the feeble minded as well

as provisions relating to the common school system. It contains provisions for the formation, alteration and consolidation of school districts, it provides for the government of the several schools, the officers thereof and prescribes their duties. It contains provisions relating to the county boards of education, to county institutes, to compulsory vaccination, to text-books for use in the public schools, to the school revenues, and to the distribution of the public school funds. It provides for the erection of school buildings and to the acquisition of land for that purpose, the chapter on eminent domain being a part of the general scheme provided for the acquisition of such land. The act of course contains many provisions other than those enumerated, but enough is indicated to show that, if this special provision is not within the title of the act, there is much else contained in it also that is not germane thereto. Indeed, it would be difficult to find in any of the provisions of the act one more pertinent or germane to the title than the one here thought objectionable. Before a public school can be even established, land on which to erect a school building must be acquired, and one examining an act relating to the general and uniform public school system would naturally expect to find therein provisions relating to the acquisition of land on which to erect school buildings.

In *State ex rel. McFadden v. Shorrock*, 55 Wash. 208, 104 Pac. 214, we held that the provision of the act relating to compulsory vaccination is within and germane to the title of the act. This case is in point on the question here, as certainly a provision relating to the acquisition of a school house site cannot be less germane to the title in question than is a provision making compulsory vaccination a condition precedent to the right to attend the public schools. We think, therefore, that the provision objected to is germane to and within the title of the act.

But perhaps the respondents' principal objection is that

the act in itself; conceding it to be constitutional with respect to its title, does not comply with the constitutional mandate with reference to the compensation to be made for the taking of private property.  The act, after granting to the several school districts the right to exercise the power to condemn for a school house site and additional grounds to an existing site, outlines a procedure in the courts for the exercise of the right.  After providing for the institution of the proceedings by petition, the judgment of necessity for the taking, and the calling of a jury to ascertain the amount of compensation to be paid for the taking, and the manner of trying the issue, continues as follows:

"Sec. 8.  Upon the close of the evidence, and the argument of counsel, the court shall instruct the jury as to the matters submitted to them, and the law pertaining thereto, whereupon the jury shall retire and deliberate and determine upon the amount of compensation in money that shall be paid to the owner or owners of the real estate sought to be taken for such school house site purposes therefor, which shall be the amount found by the jury to be the fair and full value of such premises; and when the jury shall have determined upon their verdict, they shall return the same to the court as in other civil actions."   Laws 1909, p. 374, § 8; Rem. & Bal. Code, § 913.

The claim of invalidity of the law is founded upon the clause providing that the compensation to be paid the owner of the property taken "shall be  .  .  .  the fair and full value of such premises."  This, it is said, limits the amount of the recovery to the naked value of the land taken, whereas by the constitution the owner of land taken for a public use is entitled not only to the fair and full value of the land taken, but for any and all depreciation the taking of such land may cause to the land not taken of which the land taken may have formed a part.  Unquestionably this contention is correct as to the measure of the recovery.  This court has so held in a long line of cases.  *Enoch v. Spokane Falls, etc. R. Co.*, 6 Wash. 393, 33 Pac. 966; *Seattle & Montana R. Co. v. Roeder*, 30 Wash. 244, 70 Pac. 498, 94 Am. St. 864;

*Sultan Water and Power Co. v. Weyerhauser Timber Co.*, 31 Wash. 558, 72 Pac. 114; *State ex rel. Biddle v. Superior Court*, 44 Wash. 108, 87 Pac. 40; *Olympia Light and Power Co. v. Harris*, 58 Wash. 410, 108 Pac. 940.

But we cannot agree with the contention that the legislature has sought to limit the recovery alone to the value of the land taken. It will be noticed that, while the act provides that the verdict of the jury shall be the fair and full value of the land taken, there are no words of limitation confining the verdict solely to that amount; hence, if we concede that an attempt of the legislature to confine the recovery to elements of damage less than the constitutional requirements would avoid the act, this act is not necessarily void. But we prefer to think clauses of this character directory rather than mandatory, and that the owner of property when taken for public use is entitled to recover all such damages as he directly suffers by the taking. This would include not only the fair market value of the land taken, but the amount of depreciation, if any, in land not taken of which the land taken formed a part, or in connection with which its use is necessary or convenient. The power to condemn is the principal thing, and when this is granted, the provisions relating to its exercise need not be prescribed to the utmost detail. It is the evident purpose of this act to leave the protection of the rights of the landowner to the justice of the superior court, since it is specially required that the court shall instruct the jury as to the matters submitted to them and the law pertaining thereto. See Rem. & Bal. Code, § 913, above quoted.

Finally, it is urged that the use for which the land is sought to be taken is not a public use. It is contended that the land is sought rather as a play-ground for the pupils attending the school than for strictly school purposes. The testimony of the superintendent of the school, from which we have hereinbefore cited, undoubtedly lends color to this contention; but nevertheless we think the use for which the

land is sought to be taken is a public use. The physical development of a child is as essential to his well being as is his mental development, and physical development cannot be had without suitable places for recreation and exercise. To acquire such grounds is, therefore, within the province of the public schools.

The order of dismissal entered by the superior court is reversed, and the cause reinstated with instructions to proceed with the hearing thereof in accordance with the statutes.

MOUNT, ELLIS, and MORRIS, JJ., concur.