ROY E. FISHER ET AL., APPELLANTS, V. BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, APPELLEE.

FILED JUNE 12, 1922. No. 21769.

1. **Constitutional Law:** HOG-CHOLERA SERUM ACT. The legislative act requiring the board of regents of the University of Nebraska to establish and operate a plant for the manufacture of hog-cholera serum and to distribute the product to farmers and swine-

growers at the actual cost of production is not void as class or special legislation inhibited by the state or federal Constitution. Laws 1911, ch. 139.

2. ——: ——: INCIDENTAL BENEFITS TO INDIVIDUALS. Incidental or unavoidable benefits to an individual or a class do not necessarily invalidate legislation enacted in the exercise of the police power for the benefit of the public.

3. ——: ——: CLASSIFICATION. The classification "farmers and swine-growers" is not unreasonable for the purposes of legislation to protect the food supply of pork by manufacturing and distributing hog-cholera serum at a state institution.

4. Taxation: OBJECTS. The raising of public funds to protect the food supply of pork by manufacturing and distributing hog-cholera serum at a state institution is within the taxing power of the state.

5. Animals: PROTECTION AGAINST DISEASES. In the exercise of police power the state may create agencies and provide means for scientific research on behalf of the public in an effort to aid in the production and preservation of food, and to that end may make experiments and manufacture and distribute remedies for the purpose of eradicating diseases among domestic animals.

6. ——: ——. The exercise of police power to prevent the destruction of animal food at the source of supply does not necessarily await commercial enterprise or initiative prompted by pecuniary gain.

7. Constitutional Law: STATUTES: ANNULMENT. If an unrepealed act of the legislature was valid when passed, the burden is on a person who pleads its unconstitutionality under subsequent conditions to prove the facts showing the process of annulment.

8. ——: UNIVERSITY: EXTENSION OF ACTIVITIES. The Constitution of 1875, by adopting the University of Nebraska as a state institution under a charter declaring a purpose "to afford to the inhabitants of this state the means of acquiring a thorough knowledge of the various branches of literature, science and the arts," and by vesting its general government in a board of regents under the direction of the legislature, did not prohibit the latter from imposing new and additional duties on the regents or from requiring them to establish and conduct a plant for the manufacture and distribution of hog-cholera serum.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*T. F. A. Williams, Clark Jeary* and *Cosgrave & Campbell,* for appellants.

*Clarence A. Davis, Attorney General,* and *Peterson & Devoe, contra.*

Heard before MORRISSEY, C. J., DAY, DEAN, FLANSBURG and ROSE, JJ.

ROSE, J.

This is a suit for an injunction to prevent the board of regents of the University of Nebraska, defendant, from manufacturing, buying or selling hog-cholera serum and from expending public money for those purposes. Plaintiff is a resident taxpayer of Lancaster county, Nebraska, and is engaged in buying, selling and raising hogs. Defendant is operating a hog-cholera serum plant at the state agricultural college under authority of a legislative act declaring:

"Section 1.   There shall be established by the board of regents of the state university a plant for the production and preparation of the hog-cholera serum discovered by the biochemic division of the bureau of animal industry, Washington, D. C.   Said plant shall be under the regulation and control of the board of regents of the Nebraska State University.

"Section 2.   The department of animal pathology of the state university shall carry on the production and preparation of said serum under the provisions of this act and shall deliver to the Nebraska state veterinarian, or his authorized deputies, said serum at the actual cost of production for so much of the serum as shall be used and applied under the direct supervision of the state veterinarian or his deputies. Said department shall also distribute said serum to farmers and swine-growers, residents of Nebraska, at the actual cost of its production." Laws 1911, ch. 139.

The act contained an appropriation of $15,000 for buildings, plant, equipment and expenses of operation, maintenance and distribution.

The petition contains allegations to the effect that the

act of the legislature is unconstitutional and void, that defendant is illegally operating a hog-cholera serum plant with public funds and is distributing serum at cost in competition with private enterprises and is going beyond the scope of the act itself in buying and selling serum produced by private manufacturers.

By petition in intervention Otto E. Lindburg, a veterinarian engaged in buying and selling hog-cholera serum for profit, also applied for an injunction on the grounds pleaded by plaintiff.

By formal answers defendant, among other things, justified the act of 1911 and the work done under it as valid exercises of police power. Upon a trial of the case the district court upheld the act and the conduct of defendant generally, but enjoined it from purchasing for resale hog-cholera serum not manufactured at the state agricultural college. Plaintiff and intervener have appealed.

The legislative act is first assailed as class or special legislation violating both the federal and the state Constitutions. The reasoning takes this form: In requiring the manufacture of hog-cholera serum at public expense and in limiting the distribution to "farmers and swine-growers, residents of Nebraska, at the actual cost of its production," the legislature violated the fourteenth amendment to the federal Constitution, providing that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws;" and also section 15, article III of the Nebraska Constitution, providing that "The legislature shall not pass local or special laws * * * granting to any corporation, association, or individual, any special or exclusive privileges, immunity, or franchise whatever." In this connection it is argued that licensed veterinarians, for instance, who buy, sell and use hog-cholera serum for profit, are denied the benefits and privileges inuring under the act to the special class limited

to "farmers and swine-growers."

There was no petty motive or unlawful class privilege to account for this legislation when it was enacted in 1911. The ravages of hog-cholera had amounted to a public calamity and the losses therefrom were topics of current history. A serum had recently been discovered through researches and experiments by governmental agencies. It was to give the public the benefit of the discovery that the act was passed. Society as a whole was interested. The quantity, quality and price of hogs were unavoidably affected by cholera and the results extended directly or indirectly to every individual consumer of foods containing pork. Both the disease and the remedy were subjects of grave public concern. They affected one of the chief industries of the state. Protecting the sources of food supplies is a legitimate function of government. The supreme aim of the legislature was the welfare of the public as a whole and not class or special legislation limited to the expenditure of public funds for the individual benefit of "farmers and swine-growers." These producers were named in the act because they were at the source of the animal food supply, where the remedy for hog-cholera could be applied. A veterinarian, as such, is not a farmer or a swine-grower. He may be put in a different class for purposes of legislation like this. If he engages in farming or swine-growing, hog-cholera serum will be available to him on the terms open to farmers and swine-growers. For the great purpose of exercising the police power for the benefit of the public at large a reasonable classification is essential. Incidental or unavoidable benefits to an individual or a class do not necessarily invalidate legislation enacted in the exercise of the police power for the benefit of the public. There is no convincing reason for condemning "farmers and swine-growers" as a classification for the purposes of legislation to protect the food supply of pork by manufacturing and distributing hog-cholera serum at a state institution. The raising of public funds for the purposes outlined is within the taxing power of the state. *State*

*v. Miller,* 104 Neb. 838.

Another argument is based on the proposition that the legislature is without power to require the state to establish and conduct at public expense a manufacturing enterprise, because the police power is limited to regulation and control. The point does not seem to be well taken. In the exercise of police power the state may create agencies and provide means for scientific research on behalf of the public in an effort to aid in the production and preservation of food and to that end may make experiments and may manufacture and distribute remedies for the purpose of eradicating diseases among domestic animals. The exercise of governmental power to prevent the destruction of animal food at the source of supply does not necessarily await commercial enterprise or initiative prompted by pecuniary gain. The act in controversy was passed in 1911. It does not appear that the legislation then interfered with any right of plaintiff or intervener or that hog-cholera serum was then an article of commerce. For anything appearing in the record the act was valid when passed. If plaintiff and intervener have since been deprived of any constitutional right by operation of the act under new conditions, the burden is on them to prove the circumstances resulting in their unhappy plight. The findings of the trial court are not sufficient for that purpose and the evidence adduced below has not been presented here. If a valid, unrepealed act of the legislature vanishes from the written law by operation of the Constitution and changed conditions, the facts showing the process of annulment must be free from doubt. If the expenditure of public money legally appropriated by the legislature for public purposes becomes unlawful by constitutional limitations and new circumstances, disbursing officers of the government should have some definite means of learning when and how the statute disappears and the use of the money appropriated becomes unlawful. On this phase of the case there is nothing in the record to establish the invalidity of the act of 1911.

The most formidable argument is directed to the propo-

sition that the board of regents of the University of Ne-
braska is limited fundamentally to educational duties, and
that therefore the lawmakers cannot require it to engage
in the business of manufacturing and distributing hog-
cholera serum as an article of commerce. On this point the
legislative and constitutional provisions relating to the
University of Nebraska are reviewed. The charter was
adopted by statute in 1869. The general government was
vested in a board of regents. The charter declared:

"The object of such institution shall be to afford to the
inhabitants of this state the means of acquiring a thorough
knowledge of the various branches of literature, science
and the arts." Laws 1869, p. 172, sec. 2.

It is insisted that the University of Nebraska, the pur-
poses thus defined by its charter and the early laws en-
acted with a view to carrying out those purposes were
adopted by the Constitution of 1875 and became parts of
the supreme law, binding alike on the legislature, the
board of regents and the courts. The Constitution of
1875 provided:

"The general government of the University of Nebraska
shall, under direction of the legislature, be vested in a
board of six regents to be styled the Board of Regents of
the University of Nebraska, who shall be elected by the
electors of the state at large, and their term of office, ex-
cept those chosen at the first election as hereinafter pro-
vided, shall be six years. Their duties and powers shall
be prescribed by law; and they shall receive no compensa-
tion, but may be reimbursed their actual expenses incurred
in the discharge of their duties." Article VIII, sec. 10.

The attorney who presented at the bar this phase of the
limitations on legislative power pointed to the provision
requiring regents to serve without pecuniary compensa-
tion and emphasized the reasons for a governing board
composed of public spirited members prompted by an un-
selfish interest in higher education, uninfluenced by pe-
cuniary considerations. He confidently predicted that
this wise purpose of the Constitution will be defeated, if

regents are subjected personally to irritating contentions arising from commercial rivalry with private enterprises. In addition to the usual incentives to advocacy his argument was animated by his love for the University of Nebraska as an educational institution and also by his pride in his *alma mater.*

The question, however, is not one of policy or wisdom, but of legislative power. The only limitations thereon are those imposed by the Constitution. When the Constitution of 1875 was adopted, all former constitutional and statutory provisions were subject to its terms. That instrument declares that the general government of the University of Nebraska shall, under the direction of the legislature, be vested in a board of six regents, and that their duties and powers shall be prescribed by law. Affording "the means of acquiring a thorough knowledge of the various branches of literature, science and the arts" is not now the limit of its purposes, powers or activities. It has long since passed the stage of scholastic instruction and in addition, is conducting practical experiments and applying knowledge for the benefit of the public, and incidentally aiding individuals, professions and industries. A constitutional provision prohibiting the legislature from authorizing the operation of a hog-cholera serum plant at the state agricultural college or from imposing new duties on the board of regents has not been pointed out or found. The court is committed to the opinion that new purposes may be added by the legislature to those enumerated in the original charter of the University of Nebraska and that new duties may be imposed upon the regents. *State v. Whitmore,* 85 Neb. 566; *Union Stock Yards Co. v. Nebraska State Railway Commission,* 103 Neb. 224.

AFFIRMED.