LONG ET AL. v. BOARD OF TRUSTEES OF OHIO STATE
UNIVERSITY ET AL.

*Ohio State University—Empowered to operate book and supply
store upon campus, when—Such an enterprise not for-
bidden by Ohio Constitution—Assumption of private cor-
poration's debt in purchasing books not prohibited—Section
5, Article VIII, Constitution—Appropriation for rotary
fund is specific, when—Section 22, Article II, Constitution.*

1. The Ohio State University may, under the powers con-
ferred upon it by statute, establish and maintain upon its
campus a store for the purpose of selling and furnishing
books and other student supplies to students and pro-
fessors of said University upon a cost basis.

2. Such enterprise, being incidental to the main objects and
purposes of the University, is not forbidden to the Univer-
sity as an agency of the state by any provision of the
state Constitution.

3. Where the board of trustees of said University purchases
a stock of books and supplies for the purposes above
named from a private corporation, and as a part of the
purchase price assumes and agrees to pay certain specified
debts of said corporation, the assumption of said debts
does not fall within the prohibition of Section 5, Article
VIII, of the Ohio Constitution, forbidding the state from
assuming the debts of any county, city, town, or of any
corporation whatever.

4. Where the Legislature makes a specific appropriation in
favor of a rotary fund, and the scope and purpose of
such fund is defined by the Appropriation Act in terms
which fairly and reasonably include the use of said
funds for the purpose of maintaining said book and supply
store, the appropriation is specific, within the meaning
of Section 22, Article II, of the state Constitution.

(Decided December 18, 1926.)

APPEAL:   Court of Appeals for Franklin county.

*Mr. Charles Druggan* and *Mr. Henry A. Williams,* for plaintiffs.

*Mr. C. C. Crabbe,* attorney general, *Mr. H. H. Griswold,* and *Mr. Charles G. Williams,* for defendants.

ALLREAD, J.   This is an injunction case, brought by a taxpayer and citizen of the state. It involves the power of the Ohio State University to establish and maintain the University Press Book Store, and to assume indebtedness and contract debts in connection therewith.

For some years the Ohio State University Cooperative Supply Company, a private corporation, maintained a store upon the campus of the University to sell books and supplies to students and professors. In July of the present year, 1926, the board of trustees of the University determined to establish a state store to handle books and student supplies, selling the same to the students practically upon a cost basis. To this end the University trustees purchased and took over the merchandise stock of the Co-operative Supply Company, inventoried at $19,000, and assumed as a consideration therefor the debts of the Co-operative Company in the sum of $16,657.31. After the original purchase, and before the bringing of the taxpayer's suit, or at least at the time of the trial, merchandise in the amount of about $52,000 had been purchased. This action was brought to enjoin the payment of the assumed debts of the Co-operative Company and the merchandise accounts of $52,000.

The claims of plaintiffs may be thus summarized:

(1) The asserted power—with or without legis-

lative sanction—is contrary to the state Constitution.

(2) No such power has been conferred by statute, expressly or by implication, upon the University trustees.

(3) The assumption of the debts of the Co-operative Supply Company by the University trustees is expressly forbidden by the Constitution.

(4) No legislative appropriation has been provided to meet the initial cost of purchasing the merchandise stock of the Co-operative Supply Company, or the additional cost of purchasing merchandise to maintain and carry on the enterprise.

The constitutional question is a challenge to the right of the state, or an agency of the state, to engage in a commercial enterprise, where such enterprise is incidental to or closely connected with a legitimate function of the state. This is a far-reaching proposition. Originally the governmental functions of the state were simple, and confined strictly to state functions; but as the state has advanced the government becomes more complex. In comparatively recent years the state has enlarged the scope of its enterprises so as to include many that have heretofore been considered as purely private enterprises. These are mostly, if not entirely, cases or instances where a commercial or private enterprise is carried on as accessory to some legitimate function of the state. This is especially true with respect to the universities of the state.

The Ohio State University is by statute made a body corporate, and very broad general powers have been conferred upon it in respect to the adop-

tion of by-laws, rules, and regulations for the government of the University, and no express limitation is found as to the general scope of the powers and duties of the trustees as to the business to be carried on by the University.

It would follow, necessarily, that all the enterprises undertaken by the University should be reasonably incidental to the main purpose, to wit, the maintenance of a University. The Ohio State University has for many years to a limited extent engaged in the furnishing of supplies to University students upon a cost basis. We see no reason why this is not a legitimate enterprise of the University, subject to such limitations as may be imposed by statute.

The second proposition involves substantially the same question. The power of the University trustees to engage in an incidental enterprise would be legitimate, unless limited by statute. No direct or specific statute would be necessary to confer the power. The formal assumption by the Ohio State University of the debts of the Co-operative Company does not, in our judgment, fall within the prohibition of Section 5, Article VIII, of the Constitution, as it is not in fact an assumption of a debt, but an agreement to pay a consideration for the purchase of specific property. If the right to make the purchase is found to exist, and, further, if the right to pay the purchase price is sustained, then the fact that the contract provides formally for an assumption of the Co-operative Company's debts would be wholly immaterial.

The most difficult question is the one in respect to the legislative appropriation. It is clear that there must be a legislative appropriation to sustain

the right of the University trustees to make payments out of the state funds.

Section 5 of the Appropriation Act is as follows:

"Section 5. The term 'rotary fund' as used in this act means a fund set aside to enable a department or institution to carry on a function or an activity, self-sustaining in its nature, the receipts from which are to be used for the function or activity for which the rotary fund is established.

"Money obtained from the function or activity for which a rotary fund is provided shall be turned into the treasury, and such moneys turned into the treasury between July 1, 1925, and June 30, 1927, both inclusive, are hereby appropriated for the purpose for which such rotary fund is herein established.

"All moneys to the credit of existing rotary funds are hereby appropriated and all existing rotary funds are hereby continued in effect for the full period named in this section."

This section plainly includes an enterprise of the kind involved in this suit. Prior to the establishment of the University Press Book Store there were several enterprises of a somewhat similar nature, which had been in existence for some time, and which were provided for out of the rotary fund, as follows:

"I. Rotary—For the maintenance of the veterinary clinic, dental clinic, dispensaries, University Hospital, laboratory supply store, general store room, journalism, mechanics and laundry, and architecture-photography."

Under the head of "Laboratory Supply Store," text-books and manuals had been purchased and sold to the students for several years before the

Appropriation Bill referred to was adopted. The Legislature must have known of this student activity, and must have intended to have provided therefor. The University Press Book Store is an enlargement of that enterprise so recognized and provided for in the Appropriation Bill. It is true that the University trustees referred to the present enterprise as the "state store." Nevertheless the nature of the business and enterprise so undertaken is substantially the same in purpose and intent as was provided for in Paragraph I, Section 5, of the Appropriation Bill. It is not necessary that the expenditures should be minutely described in the Appropriation Bill. It is only necessary that provision be made in the act that the funds be specifically applied to the purchase in question.

Counsel for plaintiffs refer to a number of authorities holding that a board of education under general authority cannot supply students with textbooks or other school supplies free. That does not meet this case, as the proposal here is to supply books practically at cost. There is, however, the board of education case referred to, known as the *"Detroit case," Atty. Gen. ex rel. Sheehan* v. *Board of Education of Detroit,* 175 Mich., 438, 143 N. W., 574, 45 L. R. A., (N. S.), 972. This case was based largely upon the statutory limitations upon the authority of a board of education.

The State University, by its board of trustees, has been given general authority by statute to maintain a University and to provide for the control and government thereof, and that authority would include an enterprise reasonably incidental to the main purpose of the University. There are no such limitations with respect to the board of

trustees of the Ohio State University as to interfere with or prevent the incidental enterprise under consideration. Section 7950, General Code, forbidding the trustees from contracting a debt not previously authorized by the Legislature, does not prevent the board of trustees of the University from contracting a debt within the general scope of the authority given to the University by statute and supported by an appropriation of the Legislature, and is not therefore a limitation which would prevent the making of the contract under consideration.

We have decided the case as made by the pleadings. As to the certificate of funds by the director of finance, we may assume, in the absence of an averment to the contrary, that the state officers will respect the law in that regard.

The enterprise being lawful, the purchase being within the incidental power of the board of trustees, the specific appropriation to the rotary fund being sufficient to include this enterprise, and the contracting of the debts under consideration not being forbidden, we are of opinion that the plaintiffs' action is not well founded, and that the petition should be dismissed.

*Petition dismissed.*

FERNEDING and KUNKLE, JJ., concur.