[No. 25951. *En Banc.* July 22, 1936.]

A. F. HEMPEL, *Appellant*, v. SCHOOL DISTRICT No. 329 OF SNOHOMISH COUNTY *et al., Respondents.*[1]

*John C. Richards* and *Earl W. Husted,* for appellant.

*Q. A. Kaune* and *Charles R. Denney,* for respondents.

TOLMAN, J.—The appellant, as plaintiff, sought by this action to permanently enjoin the defendant school district and its officers from carrying on, or permitting to be carried on, in its school building or on its premises anything in the nature of commercial activities such as the sale of candy and ice cream and the serving of lunches. The theory of the complaint was that these activities were being carried on by the use of public money or upon the credit of the school district; and that the plaintiff, a resident and a taxpayer of the district and a merchant dealing in similar merchandise in the immediate vicinity of the school, was financially injured by the acts complained of.

[1]Reported in 59 P. (2d) 729.

The defendants, appearing jointly, answered as to these activities as follows:

"Defendants deny each and every allegation, matter and thing alleged in Paragraph VII except that defendants admit that the student body of said school have associated themselves together in a voluntary organization which they call the Student Association and that said association, with its own funds, and wholly upon its own credit, have served light lunches to the members of the student body in said school building and have purchased, sold and supplied to said student body in connection with said lunches, wholesome candies and ice cream; that the service of said lunches, ice cream and candy is for the convenience of said student body and is not carried on for the purpose of deriving any profit whatsoever to any individual or to said school district; that without said service said student body would be without adequate facilities for obtaining such lunch service and that the service of such lunches upon the school grounds promotes good order and the general welfare of said school enterprise."

The proof abundantly sustained the allegations of the answer and, in addition, showed that any incidental profits derived from these activities were used by the students' association legitimately for the general good of the student body.

The trial court, after a trial on the merits, entered judgment dismissing the action with prejudice. The plaintiff has appealed from that judgment.

There is now no serious dispute as to the material facts, which perhaps should be further briefly outlined as follows: The school district is a district of the second class, with its high school and junior high school located in the city of Snohomish. The district is quite large, and four bus lines bring the pupils considerable distances from their homes to the school.

For years past, the student body has been permitted to maintain and operate in the school building a cafe-

teria and a candy counter which are open to the students (and presumably to the teachers also) only during the noon intermission of forty minutes. No money or credit of the district has ever been used for these activities, and they have been and are financed and maintained entirely by the student body. Two of the teachers act in a supervisory capacity, one over the lunch room and its affairs, the other over the candy counter and its affairs. Neither of these teachers receive any compensation for these extra services, which are apparently volunteered for the good of the student body.

Some small profit has been derived, perhaps entirely from the operations of the candy counter. These profits have been and are being used by and for the student body in its extra-curricular affairs, such as the expense of sending students to conferences and conventions, the promotion and maintenance of athletic activities, school plays, students' clubs, and the like. Some of the money has been expended for improving the school grounds, chiefly to better the athletic field. The testimony indicates that the profits have all been expended for those things which the students, and not the district, have always heretofore financed.

In addition to all this, there is considerable testimony, not contradicted, indicating that, as most of the students cannot go home for luncheon at the noon intermission, and as the business district of the city of Snohomish is five blocks distant from the school house, discipline is better maintained and the general welfare of the students is advanced by keeping them together and at the school instead of permitting them to scatter along the streets and about town during the short noon intermission.

These facts present but one question of law, and that is the right of a school district of the second class

to permit the use of its school building, or buildings, by its students for the purposes mentioned.

The appellant places considerable stress upon the fact that the legislature has seen fit to authorize directors of school districts of the first class to operate lunch rooms in school buildings for pupils and teachers, provided that the expenses shall not exceed the revenue therefrom (Rem. Rev. Stat., § 4806-1 [P. C. § 5007b]).

It is argued that the permission affirmatively given to directors of districts of the first class is tantamount to a denial of such permission to all school districts, except first class districts. Assuming that to be so, for present purposes, still, since the district here established and operated nothing, it has not transgressed.

Rem. Rev. Stat., §§ 4776 and 4782 [P. C. §§ 4979, 4984], apply to all school districts of whatever class, and generally enumerate the powers of school directors or school boards. Section 4782, *supra,* gives to the directors of each school district custody of the property of the district and power "to transact all business necessary for maintaining school and protecting the rights of the district." If statutory permission be necessary to authorize student activities in school buildings, then we think such statutory authority can be found here. The custody of the property is vested in the directors in order that schools may be maintained and carried on. Schools are to be maintained and carried on for the purpose of educating students and advancing and maintaining their welfare while they are being educated. Education is to be obtained not alone from the study of books, but also by the development of body and mind in all proper directions.

Student activities, as they are now known and carried on with general public approval, include the giv-

ing of concerts, class or school plays, athletic exhibitions and other entertainments to which the public is invited, and a charge for admission is made in order to support such activities without expense to the taxpayer. These activities have educational value, some more than others, perhaps, but all tending strongly in that direction. They promote interest in and loyalty to the school on the part of the students. They provide an impetus to study and tend strongly to round out and develop character and to make better men and women and better citizens of the students, thus advancing the general welfare.

If directors of a second class school district may permit student activities at all, we see no reason why those activities may not include the sale of lunches, ice cream and candy, both for the direct effect on the welfare of the students and also for the indirect benefit of thus financing other and perhaps still more desirable functions.

The fact that the teachers give of their own time to supervise, without expense to the district and without interference with the duties they are paid to perform, does not tend to make the district an actor or to make it liable in any way.

There is no direct, explicit statutory authorization giving to the directors power to permit the use of school buildings for anything except the conduct of the schools, but, as an incident to the general power to control the property, conduct the schools and transact all necessary business, it would seem not unreasonable to hold that the directors have also the necessarily implied power to permit the use of school buildings for such student activities as they may find to be helpful and advantageous in educating those for whom the schools are established.

The appellant relies upon *McGilvra v. Seattle School*

*District No. 1,* 113 Wash. 619, 194 Pac. 817, 12 A. L. R. 913, and other like authority. The cases which he cites involve the spending of the money or the lending of its credit by the school district or the carrying on of business in a school building for private profit, or something of similar nature, and therefore none are in point here.

Respondent cites *Juntila v. Everett School Dist. No. 24,* 178 Wash. 637, 35 P. (2d) 78, where it is said:

"The respondent school district was a municipal corporation or quasi municipal corporation, created by the legislature, and exercises such powers as the legislature has granted in express words, or those necessarily or fairly implied in or incident to the powers expressly granted or those essential to the declared objects and purposes of the corporation. *Seattle High School Chapter No. 200 v. Sharples,* 159 Wash. 424, 293 Pac. 994, 72 A. L. R. 1215."

In that case, we held that the school district there involved had the incidental or implied power to improve and erect buildings upon the athletic field.

Respondent cites from other states: *Bozeman v. Morrow,* 34 S. W. (2d) (Tex. Civ. App.) 654; *Ralph v. Orleans Parish School Board,* 158 La. 659, 104 So. 490, and *Goodman v. School Dist. No. 1,* 32 F. (2d) 586, 63 A. L. R. 92. These cases seem to go far beyond the question here involved and to be authority for holding that the directors might lawfully carry on the activities mentioned. That, however, is not a question to be here decided. Their reasoning well supports the views we have expressed, and finding no authority to the contrary, we are satisfied that the trial court reached a correct result.

The judgment is affirmed.

ALL CONCUR.