## Dodge v. Jefferson County Board of Education.

June 23, 1944.

**2**

James E. Fahey and Woodward, Dawson & Hobson for appellant.
Henry M. Johnson for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Recently the Jefferson County Board of Education, having jurisdiction and control of common schools outside Louisville, and the fiscal court, entered into agreement by way of joint resolution creating the Jefferson County Board of Recreation. This was done in accordance with provisions of Ch. 97, KRS. The resolution provided for a Supervisor and Board of Recreation, with duties defined, all under the supervision of the court and Educational Board. Also that the Recreation Board was to submit to the two bodies a budget plan for each fiscal year, subject to approval by each of the two bodies in joint action, in time to allow the Board of Education to submit its budget to the fiscal court and other authorities. The provision subjected to criticism by appellant is that appropriating to the Recreation Board for purposes of recreation for children of school age residing in the county outside the city, the sum of $40,000, a like sum being afforded by the fiscal court.

It was proposed that sufficient sum for the purpose be set apart each year. However, the instant appropriation was for only the fiscal year 1944—45, and it is pleaded and not denied, that the Board had in its treasury more than $40,000 unappropriated, and the appropriation was well within the Board's unencumbered annual income for the fiscal year ending June 30, 1944, and its collectible revenues for the succeeding fiscal period. It was provided that supervisors and instructors employed by the Board should possess the same qualifications as those holding similar positions in the schools of the Commonwealth and under the supervision of the County Board.

Following the adoption, the Board filed declaratory proceeding (sec. 639a—1, Civil Code of Practice) asking the court to determine whether or not in view of certain provisons of the Constitution the Board had authority to carry the resolution into effect, or whether the statute in question authorized it to enter into the program. Appellant, a resident taxpayer was by order permitted to defend for all taxpayers of the district. He demurred and without waiving answered by admitting all factual allegations, and plead that the resolution was invalid

insofar as it undertook to transfer funds raised by taxation for school purposes, because in contravention of secs. 180, 184 and 186 of our Constitution. A reply denied the conclusions of law. Judgment was entered holding the resolution valid in all respects.

In brief no serious question is raised as to the matter of exceeding the debt limitations (sec. 157, Constitution), perhaps because of the facts admitted by pleading, that there is no creation of such or any debt coming within the inhibition of that section of the Constitution, since it is shown that the contribution comes from a surplus, is made for one year, leaving future years to circumstances and conditions then existing.

It is contended that the statute does not authorize the Board to join with the court in the erection or maintenance of a recreation center. The legislature, recognizing the establishment of playgrounds, parks and recreation centers as a proper municipal purpose, by various acts now embodied in Ch. 97, KRS, made provision therefor. Section 97.010 provides for the acquisition of suitable properties, and by subsection 2 provided that any school district may join either with a city or county in "providing and conducting public playgrounds and recreational centers." The sections following make provisions for the methods of acquiring, establishing and maintaining such enterprises. We think the statute is plain in extending the authority; it is subject to no other construction. It is true that there is no explicit provision for the expenditure by the Board of such sum or sums as may appear to it in the exercise of reasonable discretion to further the intended purpose. The force of the argument is that while the school district may join in "providing and conducting" the enterprise, the county must bear all incident expenses. The power and authority granted by a statute is not always limited to that which is specifically conferred, but includes that which is necessarily implied as incident to the accomplishment of those things which are expressly authorized. Long v. Mayo, 271 Ky. 192, 111 S. W. 2d 633; National Surety Co. v. Com., 253 Ky. 607, 69 S. W. 2d 1007. See several cases cited in the Long-Mayo case. What we shall say later will to some extent answer the anticipated argument (not stressed by appellant) that taxes collected for one purpose shall not be applied to another. If the recreational plan is held

to be embraced within the terms "education," "common school purposes," or "common school system," there is no misapplication of the taxes raised for school purposes in the school district, which, under our laws, comprised the entire county.

The greater part of the argument in both briefs is devoted to the old and oft discussed question as to what is to be embraced in the terms "education," "common schools," and "common school system." One of the older and frequently quoted cases arose in 1874, Collins v. Henderson, 11 Bush 74. That opinion, as years went by, has been considerably liberalized though it may be conceded that the principles announced and applied to the facts of the case are sound. As civilization has progressed, the ideas as to what constitutes, and the necessities for, education has followed a liberal trend. It took some time to pass from the custom, or duty placed on trustees to proclaim to parents that they might send their children to school, notwithstanding they themselves made no contribution toward paying expenses (Gen. Stat. 1873 "Schools," sec. 222) to compulsory education. It was also a far cry from the teaching of the three "R's" to manual training, teaching of the arts, physical culture, arrangement for moral training, the teaching of the evils attending the use of alcoholic liquor, free text books, transportation of pupils, insurance on school busses, teachers' pensions and higher standards. We are yet a long way from perfection. "The problem will never be absolutely solved, for that would imply an absolute best education irrespective of conditions, but the practical solution will be reached only when a true adjustment is made between the process of education and the life for which that education is intended to be a preparation." Encyc. Brit., "Education."

Whether the events now taking place on foreign soil will lead to compulsory military training in the common schools is now widely discussed. In 1930 the writer of McNair v. School Dist., 87 Mont. 423, 288 P. 188, 191, 69 A. L. R. 866, said: "The World War taught the necessity for, and gave an impetus to, the greater attention to physical training as a legitimate function of education, and throughout the nation schools of all grades have, during the past ten or twelve years, devoted more time and expense to this subject of education than ever

before in this country, and we may assume that the Legislative Assembly of 1927 was not unmindful of these facts." The writer pointed out that the idea was not in any wise a new one, since history recited that the early Greeks divided their subjects of education into two groups under the general heads, "Music and Gymnastics," the first comprising all mental, the latter all physical training. It was also said that education may, in the common acceptation of the word, be particularly directed to development of either mental, moral or physical powers, but in its broadest and best sense, embrace them all.

In the McNair case the court upheld a (voted) bond issue of $90,000 for equipping and maintaining an outdoor gymnasium and athletic field. The discussion turned on the breadth of the words "System of public, free, common schools," found in the Montana Constitution (Sec. 1, Art. 11). In German Gymnastic Association v. City of Louisville, 1903, 117 Ky. 958, 959, 80 S. W. 201, 65 L. R. A. 120, 111 Am. St. Rep. 287, the question was whether or not the association engaged in the teaching of physical culture and gymnastics came within Section 170 of our Constitution exempting educational institutions from taxation. In holding the institution exempted we wrote:

"Education is not confined to the improvement and cultivation of the mind. It may consist in the cultivation of one's religious or moral sentiments. It likewise may consist in the development of one's physical faculties. * * * Their students are taught, not only the dead and modern languages, mathematics, and the sciences, etc., but the Bible and Christian evidences, and a gymnasium is maintained, and football and other athletic sports are encouraged. The cultivation of the mind, the improvement of our moral and religious natures, and the development of our physical faculties are necessary to a perfect education. The framers of our Constitution did not use the term in such a restricted sense as to exclude exercises which tend to develop strength. This is of as much importance * * * as the acquisition of a knowledge of Latin, Greek, mathematics, etc."

There is another phase which would tend to justify the operation of the enterprise. We may not characterize it as judicial knowledge, but we cannot let escape from notice, as is evidenced by a reading of daily news-

papers and current magazines, that at this time, perhaps more so than ever before in our history, there is a necessity to pay more attention to delinquency of our youth; to curb a wave that seems to be alarming the best thought of foremost citizens of our cities and towns. In every instance the primary remedy is in supplying playgrounds and recreational centers, to be placed under the supervision of those capable of teaching morals, clean living, and the care and building of healthy bodies. This is educational.

We may point to a few cases in our own jurisdiction to observe the trend from the thought of those who in pioneer days doubted that the State should furnish any education; later nothing higher than such as could be garnered in the eight common school grades. The progress has been slow but sure. Reference may be made to Board of Education v. Board of Library Trustees, 113 Ky. 234, 68 S. W. 10; Board of Education of Bowling Green v. Simmons, 245 Ky. 493, 53 S. W. 2d 940; Schuerman v. State Board of Education, 284 Ky. 556, 145 S. W. 2d 42.

Courts of other jurisdictions have universally given the broader meaning to the words ''education'' and ''common schools,'' and in a number of cases have held recreation, especially where athletics was the principal feature, to come within the scope. Burlington ex rel. School Com'rs. v. Burlington, 98 Vt. 388, 127 A. 892, (school gymnasium); State ex rel. v. Superior Ct., 69 Wash. 189, 124 P. 484 (athletic field); Reiger v. Board of Education, 287 Ill. 590, 122 N. E. 838; Woodson v. School Dist., 127 Kan. 651, 274 P. 728 (building for dramatics and athletics); Alexander v. Phillips, 31 Ariz. 503, 254 P. 1056, 52 A. L. R. 244 (stadium comes with the meaning of ''schoolhouse''); Wilkinsburg v. School Dist., 298 Pa. 193, 148 A. 77 (recreation field); Wright & Ditson v. City of Boston, 270 Mass. 338, 170 N. E. 72 (supervisor of play and games); Young v. Linwood School Dist., 193 Ark. 82, 97 S. W. 2d 627 (building for gymnasium, home economics and vocational training is ''school building'').

Section 184 of the Constitution is a broad provision and leaves to the lawmaking body the determination of what is an efficient educational system, Prowse v. Board of Education of Christian County, 134 Ky. 365, 120 S. W. 307 and to that body wide discretion in choosing the

method of supplying an efficient system, Elliott v. Garner, 140 Ky. 157, 130 S. W. 997; Schuerman case, supra. It is so well established that physical and moral training is basically important that it would be difficult to conclude that public moneys may not be expended for the purpose, and in the manner and under the circumstances here shown.

Judgment affirmed.