VILLYARD *et al. v.* REGENTS OF UNIVERSITY SYSTEM OF GEORGIA; *et vice versa.*

Nos. 16414, 16415. NOVEMBER 17, 1948.

*Erwin Sibley* and *Young H. Fraser,* for plaintiffs.

*Eugene Cook, Attorney-General,* and *Hamilton Lokey,* for defendant.

ATKINSON, Presiding Justice. (After stating the foregoing facts.) The duties and powers of the Regents of the University System of Georgia are set forth in the Code, §§ 32-101 et seq. They are untrammeled except by such restraints of law as are directly expressed, or necessarily implied. "Under the powers granted, it becomes necessary . . to look for limitations, rather than for authority to do specific acts. . . Limited only by their proper discretion and by the Constitution and law of this State, they may 'exercise any power usually granted to such corporations.'" *State of Georgia* v. *Regents of the University System,* 179 *Ga.* 210, 227 (175 S. E. 567).

Whether or not the operation of a laundry and dry-cleaning service by a State college at reduced prices for the benefit of students, faculty members, and persons connected with the institution, constitutes unfair competition, is a question of first impression in Georgia.

In *Davison-Nicholson Co.* v. *Pound*, 147 *Ga.* 447 (4b) (94 S. E. 560), this court, in dealing with the powers and duties granted by the legislature to the board of trustees of a State educational institution, held that "the right to protect a public educational institution and its student body is equal to or superior to the right of one, as a merchant, desiring to deal with such institution or its students."

In other jurisdictions, enterprises held to be reasonably related to the education, welfare, and health of student bodies, and therefore not to constitute unfair competition, include the following: cafeterias which were operated primarily for the student body, but which also served the faculty, and occasionally parents and visitors (Goodman *v.* School District, 32 Fed. 2d, 586, 63 A. L. R. 92 and Annotation on p. 100; Ralph *v.* Orleans Parish School Board, 158 La. 659 (2), 104 So. 490; Hempel *v.* School District, 186 Wash. 684, 59 Pac. 2d, 729; Bozeman *v.* Morrow (Tex. Civ. App.), 34 S. W. 2d, 654) ; rental of school property for opera, public dance, or community purpose, in competition with private business (Beard *v.* Board of Education, 81 Utah 51, 16 Pac. 900; Young *v.* Board of Trustees, 90 Mont. 576 (8), 4 Pac. 2d, 725; Merryman *v.* School District, 43 Wyo. 376, 5 Pac. 2d, 267, 86 A. L. R. 1181) ; operating a store for the purpose of selling books and other student supplies to university students and professors upon a cost basis (Long *v.* Board of Trustees, 24 Ohio App. 261 (1), 157 N. E. 395) ; operating a university press for work done outside of that done for the university, the earnings being incidental to its use for university purposes (Fanning *v.* University of Minnesota, 183 Minn. 222 (5), 236 N. W. 217) ; maintenance of a recreation center (Dodge *v.* Board of Education, 298 Ky. 1 (2), 181 S. W. 2d, 406) ; operation of a university infirmary (Davie *v.* Regents of University of California, 66 Cal. App. 689, 227 Pac. 243) ; manufacture and distribution of hog-cholera serum to farmers and swine-growers at cost (Fisher *v.* Board of Regents of the University of Nebraska, 108 Neb. 666, 673, 189 N. W. 161).

Applying the above legal principles to the facts of the present case, if the operation of the laundry and dry-cleaning service, at a price less than the commercial rate for the benefit of those connected with the school, is lawful, it matters not that such enterprise is competitive with the plaintiffs' business. "When free pub-

lic schools were first established, they competed with and ultimately drove from the field numerous private schools, but those who conducted the private schools could not complain of unfair competition since the state has the right to establish the free school system. Universities and colleges established by the states are in direct competition with privately controlled colleges, but the competition is not unfair nor unlawful because the state has the power to establish its universities and colleges, and to support them by taxation." Beard v. Board of Education, 81 Utah 51, 56 (supra).

The petition alleges that the defendants do not operate laundry and dry-cleaning enterprises at all of their several branches of the University Educational System, and that the use of the reduced rates for the faculty members and employees as an inducement for their accepting employment, and as part payment of salaries and wages and to supplement the same, is discriminatory, arbitrary, and violative of article 1, section 1, paragraph 2, of the State Constitution (Code, Ann. Supp., § 2-102), which guarantees equal protection of the law, in that it unequally applies the law to persons of the same class as to their remuneration for the same kind of work, according to whether said enterprises are available to them at said branch where they are employed, thereby increasing remuneration for the same class of work to those persons at those branches of said system where said enterprises are located. The constitutional question made by this attack is not decided, since the petitioners are not in a position to raise the question. This is true for the reason it is not alleged that the petitioners, or any of them, come within that class of individuals who are alleged to have been discriminated against as faculty members or employees in branches of the University Educational System where laundry and dry-cleaning services are not furnished. *Hazleton* v. *Atlanta,* 147 *Ga.* 207 (4) (93 S. E. 202); *Webb* v. *Atlanta,* 186 *Ga.* 430 (5) (198 S. E. 50); *Whittle* v. *Jones,* 198 *Ga.* 538 (4) (32 S. E. 2d, 94).

The petition alleges that availability of such enterprise for the said customer-employees, including faculty members, and the doing of work and service under the bailment contracts, are illegal, in that they constitute obligations and debts created on behalf of the State, in violation of article 7, section 3, paragraph 1,

of the Constitution (Code, Ann. Supp., § 2-5601) because they subject the defendants on behalf of the State, to expense and loss in resisting the efforts of those who might claim under the contracts to enforce the same. This court has held that a debt of the Regents of the University System is not a debt of the State. *State of Georgia* v. *Regents of the University System,* 179 *Ga.* 210, 222, (supra). Therefore, it can not be said that the creation of a debt by the regents is unconstitutional for the reason urged by the petitioners, that such debt is a debt against the State.

The Code, § 32-121 (4), declaring that the Board of Regents shall have power, "to exercise any power usually granted to such corporation, necessary to its usefulness, which is not in conflict with the Constitution and laws of this State," is not indefinite, uncertain, and unconstitutional, for the reasons, as alleged, (a) that there is no other corporation of like character in Georgia, and (b) that the Code section could not by reference to powers of corporations outside the State legally enact the same as factual powers of the defendants. Nor is the above portion of said Code section inconsistent with article 3, section 7, paragraph 20, of the Constitution (Code, Ann. Supp., § 2-1920), which declares that "the General Assembly shall have the power to make all laws and ordinances consistent with this Constitution and not repugnant to the Constitution of the United States, which they shall deem necessary and proper for the welfare of the State."

The operation of the laundry and dry-cleaning service in the circumstances set forth in the petition does not, as contended, constitute the taking, by the defendants for the State, of private property of the petitioners without due process of law, in violation of article 1, section 1, paragraph 3, of the Georgia Constitution (Code, Ann. Supp., § 2-103), and the Fifth Amendment to the United States Constitution (Code, § 1-805). The due-process clauses of the State and Federal Constitutions prohibit the enactment of a law which would impair vested rights, but do not insure to a person, first in the field, a monopoly in any line of business. Young *v.* Board of Trustees, 90 Mont. 576 (8) supra.

Finally, the petition alleges that it is unlawful for a member of the regents to avail himself of the laundry work and dry-cleaning service, since under the Code, § 32-111, it is provided

that regents shall each receive $7 for each day of actual attendance at the meetings of the board in lieu of expenses, and actual cost of transportation to and from the place of meeting, and that: "The members of the board shall receive no emolument or compensation for their services as such members." This Code section does not make it unlawful for a member of the Board of Regents to have his laundry and dry-cleaning done at a price which is less than the commercial rate for such service.

Upon request to review and overrule or modify the case of *State of Georgia* v. *Regents of the University System,* 179 *Ga.* 210 (supra), the rulings therein are adhered to, and the request of the petitioners that they be overruled or modified is denied.

The allegations of the petition as amended failed to state a cause of action for the injunctive relief that was sought, and the trial court erred in overruling the defendants' general grounds of demurrer. All further proceedings were nugatory. "When the Supreme Court has before it both a main bill of exceptions and a cross-bill of exceptions, and the latter presents a question which is controlling upon the case as a whole, it will be disposed of first; and if the judgment therein excepted to is reversed, the writ of error issued upon the former will be dismissed." *Rogers* v. *Carter,* 177 *Ga.* 605 (2) (170 S. E. 868), and citations.

*Judgment reversed on the cross-bill of exceptions. Main bill of exceptions dismissed. All the Justices concur.*