INHABITANTS OF WESTBROOK *vs.* INHABITANTS OF DEERING.

*Town cannot vote money to oppose its division. Liability after division.*

A town cannot incur expenses in opposing, before a legislative committee, a division of its territorial limits.

The vote of Westbrook passed March 20, 1871, to build a bridge, and appointing their selectmen agents for that purpose, did not create any debt, liability, or cause of action, against the town. The contract for the bridge, first creating such liability, having been made after the act dividing the town took effect, the new town of Deering cannot be held to contribute to the expense of it.

ON REPORT.

ASSUMPSIT, upon an account annexed and the general money counts, to recover two-thirds of certain expenses of employing counsel, procuring witnesses, &c., &c., in the winters of 1870 and 1871, to oppose, before the legislative committee to whom the subject was referred, a petition for the division of the town of Westbrook. In 1870 the prayer of the petitioners was refused, but it was granted the succeeding year, the part set off from the old town being erected into the town of Deering by act approved February 16, 1871, the tenth and last section of which provided that this act should take effect March 21, 1871. Special laws of 1871, c. 628. The expenses were incurred by a committee chosen

at a legal town meeting, held December 29, 1869, which voted to authorize this expenditure. This committee disbursed over three thousand dollars in opposing a division of Westbrook. The third section of Special Laws of 1871, c. 628, making the division, provided that "said town of Deering shall be holden to pay the said town of Westbrook two-thirds parts of the debts and liabilities of said Westbrook now existing," &c.

A bridge built for the town across the Presumpscot river, at Saccarappa, in the spring of 1870, by the Moseley Iron Bridge and Roofing Company, proving defective, it was taken away by the contractors, and, upon the twentieth day of March, 1871, the town, at a legal meeting, voted to and did authorize its selectmen to contract for a new bridge in place of the other, but no agreement for building the new bridge was made with any one until March 30, 1871. It will be remembered that Deering became a town March 21, 1871, the day after it was voted to substitute another bridge for that furnished by the Moseley Company. This new bridge was erected at a cost of about six thousand dollars. The court were to enter judgment according to the facts and legal rights of the parties.

*S. C. Strout* and *H. W. Gage,* for the plaintiffs.

I. When the rights of a town are imperilled, or its interests involved, it can employ an attorney to defend them. *Knowlton* v. *Plantation,* 14 Maine, 20; even though it be not a party of record to the proceeding. *Briggs* v. *Whipple,* 6 Vermont, 95; *Cushing* v. *Stoughton,* 6 Cush., 389; *Lawrence* v. *McAlvin,* 109 Mass., 312.

This court have settled the question here raised, in *Frankfort* v. *Winterport,* 54 Maine, 250. This was an "existing liability" when c. 628 took effect. *Batchelder* v. *Epping,* 28 N. H., 354. There was the same necessity for informing the tribunal before which this question of division was pending, by evidence and argument, that exists in any other case, in any other form.

II. The bridge, though not actually contracted for till after

Westbrook v. Deering.

March 21, 1871, was imperatively ordered March 20, 1871, those who are now citizens of Deering being present at the town meeting of that day, and acting affirmatively upon the question. A binding obligation to make the contract was then cast upon the selectmen.

*Bradbury & Bradbury* and *Edward Payson*, for the defendants.

I. In relation to the first question in this case we contend (1) that no portion of the sum disbursed can be recovered of Deering; (2) or, at any rate, only so much as was necessary to present the subject fairly to a committee of the legislature, employing only a reasonable number of counsel and witnesses for the purpose, and paying fair compensation for the legal services rendered ; (3) that all sums paid to counsel or agents for "lobbying," or trying to influence the legislature, must be disallowed; only the witness fees ($120,) being necessary to give the committee all needed information.

We shall cite no authorities to sustain the legal aphorism that towns are strictly limited to the powers conferred by statute ; of which that of taxing its citizens for the purposes here contemplated is not one, unless these items come under the meaning of the clause "other necessary town charges." The particular interpretation of these words must be given with reference to each case, as it arises ; but their general meaning has been fully determined to mean that which is made necessary by a proper discharge of the recognized functions of a town as such ; that is, what is requisite to enable the town to discharge its trusts. *Stetson* v. *Kempton*, 13 Mass., 281 ; *Allen* v. *Marion*, 11 Allen, 109 ; Opinion, 52 Maine, 598. The question, then, is narrowed down to this single point : Is it the duty of a town, as such, to oppose its own division ? When a town is created, is that one of the trusts committed to it, to see that it shall never be divided ? This is the plaintiffs' theory. Its absurdity is seen from the following considerations : (1) If it is the duty of a town to oppose its own division, then it is compell-

ed to oppose that, the doing of which the State invites. (2) It is charged with a duty for a neglect of which no penalty is provided, and no means to compel performance. (3) It would be its corporate duty to oppose that which every individual citizen might desire to see done ; in which case there would be a duty with no power of performing it; thus contradicting the principle, that where a duty is imposed, a power is bestowed for its performance. (4) If the act derives its legality from the vote of the town, it may raise money now to promote and now to oppose division; and this legal solecism is the result, that the duty of a town depends upon the vote of its citizens, and fluctuates according, as majorities preponderate. But a tax, to be legal, must be uniform as to the objects to which it is applied. (5) It would be its duty to do that in respect to which, being done, every citizen finds himself as free to act as he was before the vote was passed. But a legal vote, by a town, is a law to every citizen, and more or less restrains his freedom.

The only reply to this view, which has even a color of plausibility, is that a town must have the right of self-defence. *Stetson* v. *Kempton* shows that this is true only to a very limited extent. But in the very act of creating a town the probability of its division is contemplated, and is of its essence ; so that, instead of being an act of hostility, directed against its corporate rights, it is only carrying into effect that which was considered as likely to occur in the beginning. The equities of the case, and the argument *ab inconvenienti*, are also in accord with this view.

The principles above urged are fully recognized in two cases lately decided in Massachusetts, not yet reported. In one (*Minot* v. *West Roxbury*) the power of the town was invoked to promote its merger into Boston, and in the other (*Coolidge* v. *Brookline*) to oppose it. In the latter case an attempt was made to destroy the effect of the former, by drawing a distinction between an effort to preserve and one to destroy the old *status*, but the court refused to recognize it, and held the same principles equally applicable to both cases.

The practice the plaintiffs ask the court to ratify is open to great abuse, subversive of independent legislation, and contrary to sound public policy. Hitherto, we have been discussing the question of municipal authority and its limitation ; but the question of prerogative—of jurisdiction—also arises, so that the action of the town becomes something more than *ultra vires*. It is an assumption of power that has not only failed to be bestowed upon itself, but has been lodged with another. The establishment and alteration of town lines has been placed in the hands of the State, whose sole province it is to determine all questions of proper corporate limits. Individuals, as citizens, may petition for a change of municipal boundaries ; but how a town, as such, can assess a tax to promote or hinder that which belongs exclusively to the State, it is not easy to understand. In *Frankfort* v. *Winterport*, 54 Maine, 250, the plaintiff failed to recover the money expended in lobbying.

The case of *Batchelder* v. *Epping*, 28 N. H., 354, there cited, proceeds upon the erroneous assumption that a town, like an individual, may do any act not prohibited by law; while the truth is it can only do that which is expressly permitted by law. *Anthony* v. *Adams*, 1 Metc., 284 ; *Vincent* v. *Nantucket*, 12 Cush., 105.

II. It is so evident that no contract for, or liability on account of, the bridge existed till after the division, that we shall consume no time in the discussion of the question. *North Yarmouth* v. *Skillings*, 45 Maine, 133.

VIRGIN, J. The principal question is, can a town incur expenses in opposing before a legislative committee, a division of its territorial limits. We are clearly of the opinion both upon principle and authority that it cannot.

Towns are created by the statute. The usual act of incorporation simply provides that certain defined territory, with the inhabitants resident thereon, be incorporated into a town by the name designated. In the absence of conditional provisions therein, an act of incorporation becomes imperative and binding whenever it

takes effect, without any formal acceptance on the part of its inhabitants. It has none of the elements of a contract, or compact, conferring a vested right upon its inhabitants as against the State, that the territorial limits of the town shall continue as when incorporated for any particular period; but it is simply an act of legislation, enacted for the public good, to be amended or repealed only by the sovereign power which created it, whenever and however, under the constitution, it deems the same end may require. The citizens of the town, as such, have no power to change even its name. Thus created it becomes an institution of the State, established for certain public purposes, and for effecting those purposes, it is invested with certain corporate powers, and is charged with corresponding duties—all either expressly or impliedly provided for in the statutes, and adapted to their peculiar nature. Within the proper scope of these purposes, powers and duties, its corporate acts bind the corporation; while all others being foreign thereto, are without law and of no binding effect. *Rumford* v. *Wood*, 13 Mass., 193; *Hooper* v. *Emery*, 14 Maine, 375; *Gorham* v. *Springfield*, 21 Maine, 58; *Ham* v. *Sawyer*, 38 Maine, 37, 1 Dillon Mun. Corp., §§ 17, *et seq.*

Among the corporate powers of a town is that of "raising such sums as are necessary for the" purposes specifically enumerated in the statutes; "and for other necessary town charges," R. S., c. 3, § 35. In this section, if in any, is to be found the authority of Westbrook to incur the expenses sought to be recovered in this action. The raising of money to be expended in opposing the division, not being provided for *in totidem verbis*, must be considered unauthorized unless it may be included in the general clause —"other necessary town charges."

The full meaning of this phrase was defined before the separation of Maine from Massachusetts, by C. J. Parker, in *Stetson* v. *Kempton*, 13 Mass., 272. The question was whether the town of Fairhaven could raise money to resist the landing of British troops then lying in sight off the coast, threatening to land and lay waste the dwellings and other property of its inhabitants. The court

Westbrook *v.* Deering.

say—"none will suppose, that under this form of expression, every tax will be legal which the town should choose to sanction. The proper construction of the terms must be, that in addition to the money to be raised for the poor, schools, &c., towns might raise such sums as should be necessary to meet the ordinary expenses of the year; such as the payment of such municipal officers as they should be obliged to employ; the support and defence of such actions as they might be parties to; and the expenses they would incur in performing such duties as the laws imposed—as the erection of powder-houses, providing ammunition, making and repairing highways and town-roads and other things of a like nature— which are necessary charges, because the effect of a legal discharge of their corporate duty. The erection of public buildings for the accommodation of the inhabitants, such as town-houses to assemble in, and market-houses for the sale of provisions, may also be a proper town charge, and may come within the fair meaning of the term necessary; for these may be essential to the comfort and convenience of the citizens. . . . . With respect to the defence of any town against the incursions of an enemy in time of war, it is difficult to see any principle upon which that can become a necessary town charge. It is not a corporate duty to defend the town against an enemy. This is properly the business of the State," &c.

The construction of this clause came before this court three years after the separation, in *Bussey* v. *Gilmore*, 3 Maine, 191, by which a tax for the discharge of a contract between a town and a toll bridge corporation for the free passage of the bridge by the citizens of the town, was held illegal upon the ground that the power to raise money for "necessary charges," extends only to those expenses which are incident to the discharge of corporate duties. Weston, J., says: "The construction of the statute in relation to the authority of towns to raise, assess and collect money is so clearly stated and so fully illustrated in *Stetson* v. *Kempton*, that we have little occasion to say more than that we are entirely satisfied with the principles of that case and the deductions there drawn. The court remark that 'it is important that it should be

known that the power of the majority over the property, and even the persons, of the minority, is limited by law to such cases as are clearly provided for and defined by the statute which describes the powers of these corporations.' By that decision, this principle did become known ; and believing that it is justified, as well from considerations of public policy, as from a sound construction of the law, we have no disposition to modify or change it, if we had the power to do so, which we clearly have not. . . The generality of this phrase has received, in the case before referred to, a reasonable limitation. Without enumerating the objects which this term may be understood to embrace, it may in general be considered as extending to such expenses as are clearly incident to the execution of the power granted, or which necessarily arise in the fulfilment of the duties imposed by law."

Passing over forty years and several cases relating to this subject decided in the *interim,* this court as constituted in 1863, in answer to certain questions submitted by the governor, said : "The words 'other necessary town charges' do not constitute a new and distinct grant of indefinite and unlimited power to raise money for any purpose whatsoever, at the will and pleasure of the majority. They embrace only all incidental expenses arising directly or indirectly in the due and legitimate exercise of the various powers conferred by statute. While towns may raise money to discharge all liabilities in the performance of their multiplied duties, they cannot (unless new powers are conferred, or an excess of power receives a subsequent legal ratification) transcend their authority and incur expenses in no way arising in its exercise." Opinion of the Justices, 52 Maine, 598.

So, in *Alley* v. *Edgecomb,* 53 Maine, 448, Barrows, J., speaking for the court, said : "Beyond question or controversy, the right of towns to grant or to raise money depends upon authority derived from some statutory provision. Like other corporations, they have no powers that are not either expressly granted or necessarily implied from such as are granted, to enable them to discharge the special functions for which they were created, and such duties as are by law imposed upon them."

Westbrook v. Deering.

In 1873, the court in Massachusetts, in deciding whether a town has the right to pay the expenses of a committee directed by vote of the town to petition the legislature for the annexation of the town to the city of Boston, and to appear with counsel to advocate the annexation,—by Endicott, J., said: "Upon a review of the authorities and upon principle, it is very clear that towns, deriving all their power to raise money and tax their inhabitants from the statutes, must necessarily be confined in their expenditures of money, and the consequent power to tax their inhabitants therefor, to the objects and purposes named in the statutes, and to those other objects and purposes not named, but so connected with and incidental to the objects named, and so directly within the line of their corporate duty and power in the ordinary administration of their affairs as towns, that they may fairly be presumed by necessary implication to be included in the words 'other necessary charges.' Such incidental power must spring from some power granted in terms, and relate to a subject matter set forth with distinctness in some portion of the statutes, and be one which is in some way necessary for the town to exercise in carrying out and performing its corporate duties, as an existing body politic. Else it has no power to tax its inhabitants; for the principle of a tax is that it is necessary by reason of a public duty in the town to do something in obedience to and imposed by public law." *Minot* v. *West Roxbury*, Mass. Mss.

Again in 1874, in a very lucid and exhaustive opinion drawn by the same learned judge, the same court reaffirm their decision in *Minot* v. *Roxbury*, and declare that they "are clearly of opinion that a town has no corporate duty to defend its boundaries or existence before the legislature, and therefore no right to tax its inhabitants therefor." *Coolidge* v. *Brookline*, Mass. Mss.

The last named case, after a very full examination, also decides that the provision in the statute of Massachusetts similar to our R. S., c. 2, §§ 26, 27 & 28—providing substantially that petitions to the legislature "affecting the rights of towns" shall not be acted on without notice to the town as therein provided—"cannot be

held to enlarge existing rights or give to towns any powers or privileges not already possessed. The whole scope of these sections relates to notice, and the phraseology must be construed with reference to that purpose." The opinion concludes as follows: "We think it is evident that it was the intention of this act that notice should be given to the inhabitants of towns of all petitions affecting their interests for the purpose of giving them an opportunity to take proper action, and communicate their wishes on the subject to the legislature. But it is not to be presumed from the language of the act that it was intended to arm towns as corporations with the power to raise money to prevent before the legislature, any change in the boundaries, or rights over their territory, which it is the constitutional duty of the legislature to make, if the public good requires. The legislature might well hesitate to give such power, not only because it might obstruct the action of the legislative body, but be open to great abuse, and obnoxious to a sound public policy."

In *Frankfort* v. *Winterport*, 54 Maine, 250, this court decided that the town, in its corporate capacity, cannot legally raise and expend money for the purpose of sending lobby members to oppose before the legislature a division of the town. This was the question then before the court requiring and receiving a decision. The remark in the opinion that the court does not wish "to be understood as overruling the doctrine of the case of *Batchelder* v. *Epping*, 28 N. H., 534" was foreign to the question and at most a *dictum*. The next succeeding sentence that "undoubtedly all corporations and towns, as *quasi* corporations, may use all lawful means to advance or protect their rights before any legally constituted tribunal, and for that purpose may employ agents or attorneys, but are restricted to a reasonable number," we now hold to be sound law provided the word rights has the signification hereinbefore indicated. R. S., c. 3, § 1; *Knowlton* v. *Plantation*, No. 4, 14 Maine, 20. Thus understood, we reaffirm the decision; but so far as the opinion may be considered as indicating the view that a town may raise money to pay even an attorney for

appearing before a committee of the legislature to oppose a division of the town, we think, for the reason stated, and upon the authorities cited, it cannot be sustained.

The votes of the town in relation to the building of the bridge were passed March 20, 1871. They took effect from their date. *Bigelow* v. *Hillman*, 37. Maine, 52. What was their effect? Under article three the town simply declared its determination to build such a bridge as would accommodate the public travel, and constituted their selectmen, *eo nomine*, agents. Under article four, the town authorized their agents " to raise such sums of money, by loan, as is necessary, in their judgment, to meet the expenses of building a good, substantial bridge."

It cannot be seriously contended that these votes of themselves created any debt, liability or cause of action against Westbrook. They simply made it possible for their agents to create a liability, by subsequent action within their scope. The contract made between their agents and Blodgett & Curry on March 30, 1871, by virtue of the authority granted by the votes, created the liability of the town. Prior to that time the act of incorporation of the defendant town had taken effect. *Judgment for defendants.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and PETERS, JJ., concurred.