## *In re* THE QUEEN'S HOSPITAL.

### Appeal from the Auditor of the Territory.

Submitted May 23, 1904.       Decided May 27, 1904.

#### Frear, C.J., Galbraith and Perry, JJ.

Money may lawfully be appropriated by the legislature for the benefit of the Queen's Hospital, an institution conducted for the relief of indigent sick without distinction as to nationality, creed or otherwise.

#### OPINION OF THE COURT BY PERRY, J.

On the motion to dismiss this appeal, we held that the appropriations involved, if they are rightful subjects of legislation, could be lawfully passed at an extra session of the legislature called under the provisions of Section 54 of the Organic Act. *Ante,* p. 514. The only question remaining is whether or not the appropriations were rightful subjects of legislation.

The money appropriated, payment of which is sought by this appeal to be enforced, was collected by taxation and can be expended for public purposes only,—it may not lawfully be used for purposes of private interest. What is a public purpose within the meaning of this rule, it is not always easy to determine. No general definition, to apply in all cases, need be laid down. It is sufficient to determine in each particular case whether, upon all the facts and circumstances, the purpose is a public one. "In deciding whether, in the given case, the object for which the taxes are assessed falls upon the one side or the other of this line, they (the courts) must be governed mainly by

the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether State or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation."—*Loan Association v. Topeka,* 87 U. S. 655, 665.

In this jurisdiction and elsewhere, to provide and care for the indigent sick has long been recognized as a proper and, perhaps, necessary function of government. This provision and care is sometimes furnished in hospitals owned and conducted by the government itself; but if the government does not own or maintain such an institution, the relief may with equal propriety be furnished indirectly through a hospital conducted by individuals for public purposes and not for private gain, by assisting, to a reasonable degree, in the maintenance of such institution. As was said in *Hennepin v. Brotherhood,* 27 Minn. 460, 462, "Without undertaking to give a general definition, it will be sufficient for all the purposes of this case to say that an institution established, maintained and operated for the purpose of taking care of the sick, without any profit, or view to profit, but at a loss which has to be made up by benevolent contribution, is a charity. If, in addition to this, the institution is one the benefits of which the public generally are entitled to enjoy, it is then a purely public charity—public, because, although not owned by the public, its uses and objects are public; purely public, because its uses and objects are wholly public, and for the benefit of the public generally, and in no sense private as being limited to particular individuals." To such an institution aid may be extended by the government, because of the function which it is performing.

The Queen's Hospital received its charter in 1859, whereby it was constituted a body corporate, with power, among other

things, to "provide for and proceed with the erection, furnishing, establishing and putting into operation, a permanent hospital at Honolulu, with a dispensary, and all necessary furniture and appliances for the reception, accommodation and treatment of indigent sick and disabled Hawaiians, as well as such foreigners and others who may choose to avail themselves of the same." The original incorporators and their successors were declared by the charter to be a board of trustees "with power to make and enact by-laws for the government, control and direction of the said corporation and its hospital" and property. The charter also provided: "In case at any time hereafter, the said corporation shall have any surplus money or property, above all its requirements and necessities for the purpose of said Queen's Hospital, contemplated by this Charter, all such surplus shall be used, applied and expended in and for the erection and establishment of other hospitals or dispensaries, on some or one of the Hawaiian Islands, for the same objects and purposes as the hospital to be established under this charter, and for no other object or purpose whatever." Referring first to the last quoted provision, the corporation does not exist for gain. Its profits, if any, can be devoted only to the extension of its own field of usefulness or for the other charitable purposes named; no part of such profits can inure to the benefit of any private individual, whether a member of the corporation or not. Further, the assistance and relief contemplated is to be extended to all indigent sick and disabled alike, without distinction as to nationality, creed, or otherwise. The language of the charter admits of no other construction, in this respect.

If, then, the purposes of the Hospital are to be ascertained from the charter alone, there can be no doubt that it is a public charity and, consequently, that public aid may be extended to it. It is contended, however, that the charter is in conflict with the provisions of the statute under which it is said to have been granted,—the act of April 20, 1859. Sec. 1 of that act provides that "It shall be competent for the Minister of the Inte-

rior, under the regulations prescribed by the general law in regard to corporations, to grant a perpetual charter to any of the inhabitants of the city of Honolulu applying for the same, being subjects or denizens of the kingdom, and to their successors, for the establishment of a hospital in said city, or the vicinity thereof, for the relief of sick and destitute Hawaiians", and Sec. 7 that "Such corporation may, as soon as the same may be done, without interfering with the primary object of said institution, as hereinbefore expressed, contract to receive and provide for sick and disabled seamen of other countries, or patients of any description who are fit subjects for hospital treatment." Whether the word "Hawaiians" in Sec. 1 was intended to mean aborigines or citizens of Hawaii, need not be considered. It may be assumed that the former was intended. Still, we think that there is nothing in the act to prohibit the hospital established thereunder from giving relief to the sick and destitute of other nationalities, provided, at least, it can do so without interfering with its so-called "primary object"; and under the general law of April 17, 1856, relating to corporations the Minister of the Interior had authority to grant a charter of incorporation to an institution created for the purpose of giving such relief without discrimination. As the pleadings and evidence show, the Queen's Hospital has, ever since its establishment, extended its aid to all indigent sick alike and that, so far as appears, without interfering with its "primary object". It is still treating all alike. As long, at least, as the principle of equality is thus observed, public moneys may rightfully be appropriated for its aid. The effect, upon the right of the Hospital to receive moneys so appropriated, of the exercise of the power, if it exists, to confine its relief to Hawaiians, need not be considered until and unless the contingency arises. The moneys involved in the appropriations and warrants now in question are, we think, for a public purpose.

That patients able to pay are charged certain sums varying in accordance with their ability or with the conveniences furnished, does not of itself render the institution any the less a public

charity. The moneys so obtained are devoted to the same charitable purposes. Charity should be bestowed only where it is needed. There is no discrimination as between the pay patients themselves. All are treated alike who fall within the same class. So also the fact that the trustees determine the patients' financial ability does not deprive the Hospital of its eleemosynary or public character. If the trustees abuse their trust, they are subject to the supervision of a court of equity. On these two points see *Downer v. Hospital,* 101 Mich. 555, 560; *Hennepin v. Brotherhood, supra; School v. Louisville,* 36 S. W. (Ky.) 921, 922; *McDonald v. Hospital,* 120 Mass. 432, 435.

An order will be made, if necessary, directing the auditor to issue the warrants demanded.

*Robertson & Wilder* for the Queen's Hospital.

*Deputy Attorney General E. C. Peters* for the Auditor.