ALICE KAMOKILA CAMPBELL *v.* INGRAM M. STAINBACK, GOVERNOR OF THE TERRITORY OF HAWAII; WALTER D. ACKERMAN, JR., ATTORNEY GENERAL OF THE TERRITORY OF HAWAII; WILLIAM B. BROWN, TREASURER OF THE TERRITORY OF HAWAII; JOSEPH DICKSON, AUDITOR OF THE TERRITORY OF HAWAII; ABNER T. LONGLEY, CHAIRMAN OF THE HAWAII STATEHOOD COMMISSION; SAMUEL WILDER KING, MEMBER OF THE HAWAII STATEHOOD COMMISSION; DAVID K. TRASK, MEMBER OF THE HAWAII STATE-HOOD COMMISSION; DELBERT METZGER, MEMBER OF THE HAWAII STATEHOOD COM-MISSION; CHARLES RICE, MEMBER OF THE HAWAII STATEHOOD COMMISSION; F. W. BROADBENT, MEMBER OF THE HAWAII STATEHOOD COMMISSION; GAVIEN BUSH, MEMBER OF THE HAWAII STATEHOOD COM-MISSION; AND LORRIN P. THURSTON, MEM-BER OF THE HAWAII STATEHOOD COMMIS-SION.

No. 2706.

Argued February 10, 1949.    Decided March 28, 1949.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY PETERS, J.

This is a bill for injunction to restrain the governor, the attorney general, treasurer and auditor of the Territory and the chairman and members of the Hawaii Statehood Commission from expending public moneys under the provisions of Act 115 of the Session Laws of 1947 upon the grounds that the expenditures of moneys, pursuant to the authority conferred by the Act upon the treasurer and auditor of the Territory and the chairman of the Hawaii Statehood Commission, are "invalid, illegal, discriminatory, contrary to public policy, not conducive to public welfare and are not within the police powers of the Territory of Hawaii in that said moneys so illegally expended and being illegally expended are used to aid private purposes and individuals and are an illegal gift of public moneys to the proponents of statehood for Hawaii and contrary to law; that said illegal expenditures heretofore and now being made are to the exclusion and detriment of citizens and taxpayers of the Territory of Hawaii opposed to statehood for Hawaii. That from said moneys so appropriated, moneys have been and now are being expended for liquor, luaus, dinners, entertainment and other purposes and objectives contrary to law and the general welfare of the citizens and taxpayers of the Territory of Hawaii."

A general demurrer to the bill was sustained and the bill dismissed without leave to amend. Hence this appeal.

Appellant, under her specifications of error, makes the following points: (1) A national or sectional advertising

and publicity campaign is not a valid public purpose for which public funds may be expended; (2) lobbying in Washington, D. C., is not a valid public purpose for which public funds may be expended; (3) the grant of unlimited discretion to an administrative agency in the expenditure of public funds constitutes an invalid delegation of power by the legislature.

The Hawaii Statehood Commission was created by the Twenty-fourth Legislature at its regular 1947 session.[1] The primary purpose of its creation was to provide a political agency to actively support and press the movement for statehood for Hawaii and to represent the Territory of Hawaii in connection with federal legislation regarding statehood. This purpose[2] and other purposes ancillary and supplementary thereto are expressed in the duties imposed upon the commission.[3] They may be classified as follows: (1) advancement of statehood for Hawaii;[4] (2) representation of Hawaii in connection with federal legislation regarding statehood[5] or affecting the Territory generally;[6] (3) protection against discrimination by the Federal Government, State governments, including their political subdivisions;[7] (4) prevention of discrimination against American citizens of the Territory;[8] (5) correction of misinformation or false statements regarding the Territory and its inhabitants;[9] and (6) promotion of the interests and welfare of the Territory generally.[10]

---

[1] Laws 1947, Act 115, ser. F-217.
[2] Id. § 2, par. 1.
[3] Id. § 2, pars. 1, 12.
[4] Id. § 2, par. 1.
[5] Id. § 2, par. 1.
[6] Id. § 2, pars. 4, 6.
[7] Id. § 2, par. 3.
[8] Id. § 2, par. 5.
[9] Id. § 2, par. 4.
[10] Id. § 2, pars. 9, 11.

In connection with its duties, it was required to assemble, compile and, in its discretion, publish information or data upon certain subjects;[11] in its discretion "to conduct national or sectional advertising and publicity campaigns"[12] and at the direction of the governor or of the legislature to conduct investigations concerning discrimination against the Territory or its inhabitants, the sources or reasons for misinformation regarding the Territory or its inhabitants, or discrimination against the Territory or the American citizens of the Territory.[13]

For administrative purposes there is a chairman of the commission; it is required to establish regular meetings and holdover meetings on the call of the chairman or four members of the commission;[14] to appoint an executive secretary and such assistants as it deems necessary for the effectuation of its purposes and to establish and staff offices in Honolulu, Hawaii, and in Washington, D. C.[15]

As the representative of the Territory the commission was required to appear, by all or such of its members, or by such members of its staff or both, as were designated by the commission or by the chairman through authority granted by the commission, before Congress or any member or committee thereof or before any bureau or department or officer of the Federal Government in regard to statehood and federal legislation regarding the same.[16]

By the Act there was appropriated from the general revenues of the Territory the sum of $200,000 for the purpose of the Act. It is therein provided: "Said sum shall be expended upon warrants on the treasurer issued by the

[11] Laws of 1947, Act 115, ser. F-217, § 2, par. 2.
[12] Id. § 2, par. 10.
[13] Id. § 2, par. 7.
[14] Id. § 1.
[15] Id. § 2, par. 8.
[16] Id. § 2, par. 6.

auditor, based upon vouchers signed by the chairman of the statehood commission.

"Of the sum herein appropriated the commission shall allocate not less than $1,000 per month to the Washington office of the commission as an entertainment fund to be expended by the officer or employee in charge of that office, who shall make a monthly report of the expenditure of said money to the commission but without requirement that he support such expenditure by vouchers. The term 'entertainment fund' as used herein shall be broadly construed to the end that the purposes of this Act may be fully served."[17]

By the same Act there was also created a holdover committee, to be composed of six members of the senate and six members of the house of representatives of the legislature to serve until the first day of the following session of the legislature or until the expiration of their terms of office in the event that such terms expired prior to the opening day of the next session. It is provided by section 4 of the Act that the holdover committee meet, cooperate and advise with the statehood commission and appear through such of its members as it shall designate before Congress or any member or committee thereof or before any bureau or department or officer of the Federal Government actively to support and press the movement for statehood for Hawaii or in connection with federal legislation regarding statehood.

Any expense of the holdover committee incurred by any appearance under the provisions of section 4, or incurred at the request of the commission or its chairman, is payable from the appropriation made by the Act. The expenses of any commissioner, or any member of the staff of the commission or any member of the holdover com-

---

17 Laws 1947, Act 115, ser. F-217, § 6.

mittee, while traveling abroad on official business, is not limited by the provisions of section 455 of the Revised Laws of Hawaii 1945, or any other general statute, but is as allowed by the commission or the holdover committee, as the case may be, and such expenses need not be supported by vouchers.[18]

Of the specifications of error assigned only the first and third will be considered. Sufficient shall appear hereafter to lay at rest the characterization of the duties to be performed by the Hawaii Statehood Commission at the seat of Government as "lobbying," made the subject of specification two.

1. The appellees justify the expenditure of public moneys for publicity purposes, under section 2, paragraph 10 of the Act, upon the ground that the purposes thereof subserve the public welfare, are for a "public purpose" and hence a rightful subject of legislation. With this we cannot agree. To accord validity to expenditures for an indiscriminate publicity campaign upon the ground that it is for a public purpose would do violence to that term as juridicially defined and dignify as "public" what obviously is purely "political." Unless the purposes of the expenditures are connected with and ancillary to the legislative right of petition they have no legal basis for their support.

The power of the Congress of the United States over the territories is general and plenary.[19] To the Congress is committed, by the Constitution, the admission of new States into the Union.[20] Under our political system a Territory of the United States can become a State only by the action and assent of the National Government ex-

---

[18] Laws 1947, Act 115, ser. F-217, § 6, par. 3.

[19] Mormon Church v. United States, 136 U. S. 1, 42; Simms v. Simms, 175 U. S. 162, 168; Dorr v. United States, 195 U. S. 138, 140.

[20] Constitution of the United States, Art. 4, § 3.

316

pressed through the Congress.

To the citizens of Hawaii the social, legal and political effect upon them of federal legislation, either pending before the Congress of the United States or proposed for its consideration, is a matter of deep interest and concern, and it is natural and reasonable that they should either privately or through their duly constituted governmental representatives voice their reactions to such legislation to the Congress and to the federal officers upon whose advice the Congress is accustomed to rely. At the time of the approval of the Hawaii Statehood Act (May 15, 1947), there was pending before the Congress of the United States a bill to establish statehood for Hawaii.[21]

The Organic Act is silent upon the powers or duties of the local legislature in respect to the exercise by Congress of its superior supervisory legislative control of the Territory. And the only legal justification for the creation of the Hawaii Statehood Commission and the conference upon it of the powers and duties enumerated in section 2, paragraphs 1, 2, 3 (so far as it affects the Federal Government), 5 (so far as it applies to congressional legislation) and 6 of the Act is, in our opinion, the right of petition as the legislative representative of the citizens of Hawaii. To create an agency to represent the citizens of Hawaii upon these subjects before the Congress of the United States and such officers of the Federal Government as may be involved upon federal legislation pending or proposed affecting Hawaii is, in the final analysis, the exercise of the right of petition reposed in the citizen and asserted by the legislative representative of the citizen.

It is the sacred and inalienable right of the citizen to petition those in governmental authority for a redress

---

[21] H. R. 49, 80th Congress, 1st Sess. Vol. 93, pt. 6, Cong. Rec. 7927, 7940.

of grievances. The significance of the word "grievances" is both objective and subjective and includes the advocacy of, as well as remonstrance against, any act, executive, legislative or judicial. The First Amendment to the Federal Constitution assumes the existence of the right and protects the citizen against its encroachment by Congress. Hence it is that citizens of the Territory may, without interference, petition the Congress of the United States for statehood and for redress against discriminatory legislation. This right of petition may be exercised independently by private citizens or by their legislative representatives.[22] Petitions by the legislature of the Territory by resolution duly adopted, memorializing and petitioning Congress upon general subjects upon which that body has power to legislate and in which the citizens of the United States locally resident have a deep interest, have not been uncommon.[23] It could hardly be seriously argued

[22] Spriggs v. Clark, Sec. of State, 45 Wyo. 62, 14 P. (2d) 667; 1 Cooley's Constitutional Limitations (8th ed.) p. 728; Spayd v. Ringing Rock Lodge No. 665, Brotherhood of Railroad Trainmen of Pottstown, 270 Pa. 67, 113 Atl. 70.

[23] Memorial to am. Org. Act: J. R. Laws 1903, p. 379, J. R. 10, Laws 1935, p. 336, S. C. R. 14, Laws 1943, J. R. 25, Laws 1947, p. 567, H. C. R. 1, Laws 1947. Memorials to am. Hawn. Homes Comm. Act 1920: J. R. 1, Laws 1927, p. 357, J. R. 2, Laws 1933, p. 272, J. R. 13, Laws 1935, p. 341, J. R. 7, Laws 1939, p. 479, J. R. 3, Laws 1941, p. 534, J. R. 19, Laws 1941, p. 557, J. R. 9, Laws 1943, p. 337, J. R. 6, Laws 1945, p. 449, J. R. 22, Laws 1947, p. 556. Memorial for statehood: J. R. Laws 1903, p. 377, app'v'd Mar. 6, 1903. Memorials re leprosy: Protest against establishment in Terr. of a national lazaretto: J. R. Laws 1903, p. 378; Treatment and cure of leprosy: J. R. 1, Laws 1905, p. 253; Financial assistance for the segregation, care, etc. of lepers: J. R. 8, Laws 1931, p. 462, J. R. 1, Laws 2nd Sp. Sess. 1931, p. 201, J. R. 16, Laws 1935, p. 346. Memorials re bonds: Flood control bonds: J. R. 9, Laws 1935, p. 335; Authority to issue bonds: J. R. 15, Laws 1935, p. 344; Congressional approval to Act 23 requested: J. R. 5, Laws 1937, p. 415; Slum clearance, request of Congress to authorize bond issue for: J. R. 10, Laws 1937, p. 419; Bond acts—Congress requested to ratify and confirm: J. R. 6, Laws 1939, p. 478; Revenue

that written petitions requesting congressional legislation upon subjects to which we have adverted might not be

bond issues, Congressional approval requested: J. R. of Sp. Sess. 1941, p. 230; Bond issue—to raise limit: J. R. 1, Laws 1947, p. 527; Bonds by Honolulu for sewers: J. R. 19, Laws 1947, p. 553. Memorials requesting public works: The deepening of Honolulu harbor and the construction of a breakwater at Hilo: J. R. Laws 1903, p. 381; Nawiliwili harbor: J. R. 2, Laws 1931, p. 455; Roadway from Honouliuli to Schofield Barracks: J. R. 5, Laws 1931, p. 459; Dredging Kaunakakai Harbor: J. R. 6, Laws 1931, p. 460; Agricultural Experiment Station, moneys for: J. R. 2, Laws 1939, p. 475; Appropriation for construction of Saddle Road Highway: J. R. 17, Laws 1941, p. 554; Agricultural Experiment Station, request for appropriations: J. R. 2, Laws 1943, p. 325; Agricultural Experiment Station, restoration of lands for use of: J. R. 8, Laws 1943, p. 331; Airport Construction Funds: J. R. 2, Laws 1947, p. 528; Hawaii Housing, increase of power: J. R. 4, Laws 1947, p. 531; Hawaii street repair, funds for: J. R. 21, Laws 1947, p. 555. Miscellaneous memorials: Federal survey of schools: Laws 1917, J. R. 1, Act 202; Federal taxation exemption, salaries territorial officials: J. R. 2, Laws 1927, p. 360; University of Hawaii, recognition to share benefits of certain acts of Congress: J. R. 4, Laws 1927, p. 361; Post Office: J. R. 2, Laws 1929, p. 355; Immigration Act: J. R. 3, Laws 1931, p. 457; Acting Secretary of Hawaii: J. R. 4, Laws 1931, p. 458; Citizenship certificates: J. R. 9, Laws 1931, p. 465; Passage of Frazier Bill re financing of agricultural indebtedness: J. R. 4, Laws 1935, p. 330; Certificates of citizenship and commission to present resolution: J. R. 14, Laws 1935, p. 342; Congress requested to exempt government employees from federal income tax: J. R. 3, Laws 1937, p. 414; Agricultural extension work: J. R. 7, Laws 1937, p. 416; Soil conservation and domestic allotment Act, adoption of policy and a plan for Hawaii: Laws 1937, Act 226, ser. A-31; Federal aid for preschool education: Laws 1937, Act 155, ser. A-28; Citizenship certificates: J. R. 1, Laws 1939, p. 474; Federal aid funds: Laws 1939, Act 196, ser. A-3; Hatch, Adams and Purnell Acts, requesting Congress for benefits of: J. R. 2, Laws 1941, p. 531; Citizenship certificates, requests to the Congress re issuance: J. R. 4, Laws 1941, p. 542; Approval of report made by Bureau of Fisheries: J. R. 18, Laws 1941, p. 556; Committee reports in matters referred to Congress, to be forwarded: J. R. 23, Laws 1941, p. 562; Veterans' regional office: J. R. 2, Laws 1945, p. 444; Naturalization parents loyal veterans: J. R. 3, Laws 1945, p. 446, J. R. 5, Laws 1947, p. 541; Compensation of officers in the Territory paid by Federal Government, etc.: J. R. 10, Laws 1945, p. 452; Fishing resources—investigation of: J. R. 3, Laws 1947, p. 529;

legally circulated among and signed by individual citizens of this Territory and when so signed forwarded to the National Congress for consideration. By the Act in question the legislature of the Territory, within its powers to legislate upon all rightful subjects of legislation of the Territory, acted as the legislative representative of the citizens.

To assure appropriate liaison between the legislature of the Territory of Hawaii and the Congress of the United States, in addition to that afforded by the delegate to Congress, the executive officers of the Territory and such committees of the legislature as it may deem expedient to appoint, the territorial legislature under its right to petition Congress on behalf of the citizens of its constituency was authorized to create a commission and to authorize and empower it as a representative of the legislative branch of the territorial government to appear before Congress or any committee thereof or before any bureau or department or officer of the Federal Government and to advocate the predetermined policy of the territorial legislature in regard to statehood and to protect the Territory and its inhabitants against discriminatory legislation by the Federal Government and to oppose and prevent discrimination by it against American citizens of the Territory. Further and additional power and authority are reposed in the Hawaii Statehood Commission but those to which we have expressly referred are sufficient for the present. It may be said that the duties imposed upon the commission by the provisions of section 2, paragraphs 3 (so far as it affects State Governments, including their political subdivisions), 4, 5 (so far as the discrimination may be general), 7, 9 and 11 of the Act have

Interest—sales, etc. of public lands: J. R. 7, Laws 1947, p. 542; Salaries of certain officers: J. R. 8, Laws 1947, p. 543; Tidal wave damage—taxation: J. R. 14, Laws 1947, p. 550.

for their basis the general welfare of the citizens of the Territory. The validity of those provisions of the Act last referred to has not been raised and we express no opinion thereon.

Furthermore, it was unquestionably a legitimate exercise of the right of petition for the legislature, in connection with its creation of a territorial agency authorized and empowered to perform the duties to which we have referred, to further authorize it to take all needful measures in the way of the preparation of the information and data referred to in paragraph 2 of section 2 of the Act.

But the purposes of the Act and the power and authority conferred upon the commission for their execution can be no greater nor extensive than the right to petition that gave them birth. The right to petition is necessarily limited by the powers and duties of the proper governing authority to which it is addressed. The purposes of the Act and the duties imposed upon the commission for their fulfillment involve governing authority and not the public. The purposes of the Act and the duties imposed are calculated to appeal to the reason and judgment of those exercising governmental authority connected with their powers and duties. The right to petition, as it has existed and now exists, does not include the right to petition the public for its favorable opinion upon the subjects of petition. To conduct a national or sectional advertising campaign on behalf of statehood for Hawaii, and for such other purposes as might be included in the right to petition, is calculated merely to influence the reading public generally. Favorable public opinion upon the subject of statehood undoubtedly may exert a profound psychological effect upon those in whom repose the legislative authority to grant or refuse statehood. Similarly, popular prejudice against proposed discriminatory legislation. But the creation of favorable public opinion is foreign to the

definition and concepts of the citizen's right to petition. And has no place in a petition of the type indicated by the Act creating the commission. To the extent that there is included in the Act the duty "to conduct national or sectional advertising and publicity campaigns" the same is invalid.

3. It is axiomatic that public moneys can be expended only for public purposes.[24] The United States Supreme Court "has long and consistently recognized that the public purposes of a state, for which it may raise funds by taxation, embrace expenditures for its general welfare."[25] A criterion is "* * * the course and usage of the government, the objects for which taxes have been customarily levied, what objects or purposes have been considered necessary to the support and for the proper use of the government * * *."[26]

The purpose for which a Territory exists is to promote the welfare, peace, happiness and prosperity of its citizens. The protection of its citizens against unequal, unjust and discriminatory legislation by the Federal Government is calculated to promote their welfare, peace, happiness and prosperity. To accelerate the evolutionary process of the political transition from a Territory to a State abstractly accomplishes the same result. Reasonable men cannot differ upon the political advantages resulting from statehood over and above those inherent in a Territory of the United States.

We must assume that the legislature of the Territory had knowledge of unequal, unjust or discriminatory action, treatment or legislation by the Federal Government against the Territory and its inhabitants; and of discrimination by the Congress against American citizens of

---

[24] In re Queen's Hospital, 15 Haw. 663.

[25] Carmichael v. Southern Coal Co., 301 U. S. 495.

[26] Loan Association v. Topeka, 20 Wall. 655 (U. S. 1874).

the Territory of Hawaii. To the extent that these conditions affected the general welfare of the citizens of Hawaii, the legislation in question has ample justification for its enactment. In the absence of anything to the contrary, "courts cannot assume that its action [that of the legislature] is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."[27] No argument is required to sustain the thesis that political progress is a rightful subject of legislation.

The course and usage of government, the objects for which taxes have been customarily levied, and what objects or purposes have been considered necessary to the support and for the proper use of government, of which we may take judicial notice, provides precedents of the expenditure of public moneys under appropriations by the territorial legislature to meet the expenses of petitions to the Congress of the United States undertaken similarly as in the instant case upon matters affecting the political well-being of the Territory.[28]

We are also informed that appropriations of public moneys were made by the legislature of the Territory of New Mexico under similar circumstances and for the same purposes.[29]

[27] Carmichael v. Southern Coal Co., cited *supra* at note 25.

[28] Hawaiian Legislative Comm., Laws 1921, Act 223; Bill of Rights Comm., Laws 1923, Acts 86, 148; Declaration of Rights, Hawaii's Citizens Comm., Laws 1925, Act 222; Hawaii Legislative Comm., Laws 2nd Sp. Sess. 1932, Act 71; Hawaii Equal Rights Comm., Laws 1935, Act 212, ser. D-169, Laws 1937, Act 204, ser. D-170, Laws 1939, Act 218, ser. D-190, Laws Sp. Sess. 1941, Act 90, ser. D-61, Laws 1943, Act 191, ser. E-176; Statehood Plebiscite, Laws 1939, Act 243, ser. E-249.

[29] Laws N. Mex. 1903, c. 108, Laws N. Mex. 1909, J. R. 7.

Holding as we do that to the extent indicated the Hawaii Statehood Act is valid, our conclusion necessarily includes the postulate that "a valid legislative power necessarily includes the right to provide funds to be expended in its exercise."[30]

The Act appropriates $200,000 "for the purpose" of the Act, including "entertainment." The issues pose the question whether "liquor, luaus and dinners" are fairly within the meaning and intent of the word "entertainment" as that term is used in connection with the specific fund to be allocated by the commission to its Washington office and if so whether such purpose is a public purpose for which public moneys raised by taxation may be legally expended. The bill also challenges expenditures for "entertainment and other purposes and objectives contrary to law and the general welfare of the citizens and taxpayers of the Territory." But the repetition of the word "entertainment," the same word used in the statute and the meaning of which we are called upon to construe, and the generalization of the words "objects and purposes," requires restriction of our consideration to the specific types of entertainment against which complaint is made.

The word "entertainment" has been variously defined but its definition and connotations are necessarily restricted by the express limitations placed thereon by the Act itself, the purposes for which the appropriation was made and the substantive law of "public purposes." The local legislature has, upon frequent occasions, placed at the disposal of executive officers of the Territory funds for "entertainment" generally[31] and "entertainment" for

---

[30] Inter-Island Co. v. Hawaii, 305 U. S. 306, 313.

[31] Secretary-State Entertainments, 1903 Ex. Sess. Act 10, § 1; Secretary-State Entertainments and Ceremonies, 1901 Ex. Sess. Act 4, § 1, 1903 Ex. Sess. Act 13, § 1; Entertainment by Counties and City and County "for the purpose of public celebrations, and the entertainment of such distinguished persons" as may be visitors, Laws 1915, Act 147;

specific purposes such as members of Congress and other distinguished visitors[32] and officers and men of visiting fleets of the United States and their guests.[33]   In all of these instances, however, the Territory was the host to guests visiting Hawaii and different considerations were involved, depriving them of the value of precedents of the "course and usage of the government" or of the "objects or purposes * * * considered necessary to the support and for the proper use of the government." They supply, however, an applicable analogy to the appropriation for "entertainment," as that word is used in the Hawaii Statehood Act, in respect to its sufficiency without further details to support an appropriation.

The claim is made that the committal to the office or employee in charge of the Washington office of the ex-

"Expenses, Entertainment"—Governor, Laws 1915, Act 175, § 1, Laws 1917, Act 234, § 1, Laws Sp. Sess. 1918, Act 28, § 1, Laws 1919, Act 74, § 1, Laws 1919, Act 222, § 1, Laws 1921, Act 229, § 1, Laws 1923, Act 27, § 1, Laws 1923, Act 148, § 1; Entertainment—Governor, Laws Sp. Sess. 1920, Act 28, § 1.

[32] Appropriations for defraying expenses of congressmen visiting the Territory during the year 1907 as guests of the Territory, Laws 1907, Act 1, § 1; "Entertainment and Expenses" of congressmen, Laws 1913, Act 81, § 1, Laws 1939, Act 234, ser. E-227, J. R. 13, Laws 1945, p. 456; "Entertainment and Expenses of Congressmen and other distinguished persons," Laws 1909, Act 5, § 1, Laws 1915, Act 4, § 1, Laws 1915, Act 168, § 1; Entertainment of members of Congress and other distinguished persons who may accompany and be included in the party of Congress and other distinguished persons whom the delegate shall designate and invite and who shall visit Hawaii, Laws 1917, Act 22, § 1; Expenses of entertainment of congressmen and members of the cabinet invited by the Governor to visit Hawaii, Laws 1923, Act 127, § 2; Entertainment and transportation while in Hawaii of the Secretary of the Interior and nonresident delegates to the Pan-Pacific Conference on education, reclamation and recreation, Laws 1927, Act 29, § 1; Entertainment of governors of various States visiting Hawaii, Laws 1947, Act 206, ser. F-208, § 2.

[33] Entertainment of fleet and accompanying newspaper men, Laws 1925, Act 4, § 1, Laws 1935, Act 89, § 1, Laws 1937, Act 130, ser. E-205, § 1.

penditure of the entertainment fund constitutes a delegation of legislative power over expenditure of public funds in that no standard is set to limit expenditures other than the limit of the appropriation itself.

It is true that legislative power over the expenditure of public moneys may not be delegated. But in the instant case the appropriation is not guilty of this vice. No provision is made by the Organic Act as to the form that legislative appropriations must take. In the absence of any provision in the Organic Act requiring the legislature to segregate all the items of an appropriation it is within the power of the legislature to broadly specify the objects for which the money is appropriated, leaving to the commission the segregation of the items in accordance with the purposes of the appropriation.[34] It is not necessary that every item of proposed expenditure be set out in detail in an appropriation bill. The items of an appropriation bill are usually in terms of an aggregate composed of several single items and all that is necessary is that the sums appropriated be classified under their appropriate heads, having in view the amounts to be appropriated and the objects to be accomplished.[35] Hence, all that is required is that it be a clear expression of the legislative will in respect to amounts and its objects. It need not be in any particular form.[36] And where as here it is impossible for the legislature to anticipate the form and type of entertainment reasonably connected with and incident to the purposes of the Act itself, a general descriptive designation, without a complete description, of the various possible subdivisions that expenditures may

---

[34] Nellis v. State, 197 N. Y. S. 762, 765.

[35] State v. Bond, 94 W. Va. 255, 118 S. E. 276.

[36] Crawford v. Hunt, 41 Ariz. 229, 17 P. (2d) 802; Crane v. Frohmiller, 45 Ariz. 490, 45 P. (2d) 955; Grable v. Blackwood, 180 Ark. 311, 22 S. W. (2d) 41.

take, is sufficient.[37]   The application of this rule is exemplified by general descriptive designations such as "expense,"[38] "construction * * * of a statewide system of durable hard-surfaced roads upon public highways,"[39] "state road and bridge fund,"[40] "rotary fund,"[41] "state highway construction and maintenance fund,"[42] "game protective fund account"[43] and "operation and travel."[44]

The additional objection is made that by the elimination of vouchers expenditures are unrestrained.  But we do not consider the elimination of vouchers material to the issue of whether the powers of expenditure of the fund constitutes an invalid delegation of legislative power. The legality of the immunity of the officer or employee in charge of the Washington office from the statutory[45] and departmental[46] regulations requiring vouchers in support of claims against the Government has not been raised. And we expressly refrain from deciding it.

It is enough to say that the use of the word "entertainment" is a sufficient compliance with the rule regarding the designation of the objects of an appropriation and that the same is a valid exercise of legislative power. The appropriation for entertainment, however, must not be considered a grant of unrestrained license to expend the public moneys in entertainment indiscriminately.   The entertainment contemplated by the use of that word as a

[37] Edwards v. Childers, 102 Okla. 158, 228 Pac. 472; State Board of Health v. Frohmiller, 42 Ariz. 231, 23 P. (2d) 941.

[38] Scroggie v. Scarborough, 162 S. C. 218, 160 S. E. 596; Terrell v. Sparks, 104 Tex. 191, 135 S. W. 519.

[39] Mitchell v. Lowden, 288 Ill. 327, 123 N. E. 566.

[40] Martens v. Brady, 264 Ill. 178, 106 N. E. 266.

[41] Long v. Bd. of Trustees, 24 Ohio App. 261, 157 N. E. 395.

[42] Edwards v. Childers, cited *supra* at note 37.

[43] Holmes v. Olcott, 96 Ore. 33, 189 Pac. 202.

[44] State Board of Health v. Frohmiller, cited *supra* at note 37.

[45] R. L. H. 1945, § 1589.

[46] Reg. 3, app'v'd Apr. 25, 1922.

designation of an object of the appropriation is entertainment reasonably connected with and incidental to the execution and fulfillment by the commission of the purposes for which the appropriation is provided.[47] A simple example is not inapt. A member of the holdover committee, thereto designated while temporarily in Washington, D. C., prepares to appear before the appropriate committee of the House to which H. R. 49 has been referred upon the subject of statehood for Hawaii. The calendar of the committee is congested and the time of the member of the holdover committee is limited. The convenience of all concerned dictates the appearance of the member of the holdover committee before the committee of the House at luncheon. The officer in charge of the Washington office, in his discretion, makes the necessary arrangements for luncheon including cocktails and charges the expense against the appropriation. The entertainment thus afforded would be reasonably connected with and incidental to the cause of statehood, one of the purposes of the Act, and hence a proper expenditure chargeable to the entertainment fund. That the lunch included liquor does not detract from the legitimacy of the expenditure. It is not sufficient, however, to condemn expenditures of the entertainment fund by the bare assertion that the purposes of the expenditure were "liquor, luaus and dinner." It is conceivable that liquor, luaus and dinner have been furnished by the commission upon occasion when hospitality in that form was reasonably connected with or incidental to the execution and fulfillment of the purposes of the Act. If so, expenditures for these purposes come fairly within the meaning and intent of the word "entertainment," as used in the Act and were properly made. Under the circumstances it was incumbent

---

[47] Westbrook v. Deering, 63 Me. 231, 238; Valentine v. Robertson, 300 Fed. 521.

upon the complainant to allege the necessary facts to take the expenditures out of the category of propriety, and this she failed to do. This does not mean, however, that she should be foreclosed from amending her bill and showing it, if she can. In refusing permission to amend and dismissing the bill the court committed error.

It does not necessarily follow that the invalidity of paragraph 10 of section 2 of the Act vitiates the entire Act. It contains a severability clause.[48] The invalidity of a portion of the law does not necessarily render the remainder void. This holding is clearly in accord with the doctrine of partial invalidity as adhered to in this jurisdiction. What remains is "* * * complete in itself and capable of being executed in accordance ,with the apparent legislative intent * * *" wholly independent of that which is rejected.[49]

Decree reversed, with leave to complainant to amend.

*J. H. Hughes* (*Hughes & Ingman*) for petitioner-appellant.

*W. D. Ackerman, Jr.,* Attorney General, for respondents-appellees.

---

[48] Laws 1947, Act 115, § 7.

[49] In re Atcherley, 19 Haw. 535, 543. (See also Territory v. Hoy Chong, 21 Haw. 39, 43; Ter. v. Apa, 28 Haw. 222, 227; Hawaiian Trust Co. v. Smith, 31 Haw. 196, 202; Damon v. Tsutsui, 31 Haw. 678, 697; Territory v. Tam, 36 Haw. 32, 38.)